**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § § | **Case No. 4:15-cv-338** |
| **v.** | § § | **Judge Mazzant** |
| **SETHI PETROLEUM, LLC and SAMEER P. SETHI,** | § § § § | |
| **Defendants.** | § § | |

**RECEIVER'S THIRD QUARTERLY REPORT FOR RECEIVERSHIP ESTATES OF (A) SAMEER P. SETHI, INDIVIDUALLY, AND (B) SETHI PETROLEUM, LLC**
**(October 1, 2015 – December 31, 2015)**

Marcus A. Helt, the Court-appointed Receiver (the "**Receiver**") for Sethi Petroleum, LLC's and Sameer P. Sethi's (collectively the "**Defendants**") receivership estates (together, the "**Receivership Estates**"),[1] hereby files this *Receiver's Third Quarterly Report*.

# I.
# BACKGROUND

1.      On July 31, 2015, the Receiver filed his *First Quarterly Report* [Docket No. 61] (the "**First Report**"),[2] which delineated the events and the Receiver's actions covering the period of May 14, 2015 to June 30, 2015(the "**First Reporting Period**"). On October 30, 2015, the Receiver filed his *Second Quarterly Report* [Docket No. 76] (the "**Second Report**"), which delineated the events and the Receiver's actions covering the period of July 1, 2015 through September 30, 2015 (the "**Second Reporting Period**"). For purposes of this Report, the Receiver hereby incorporates and adopts the factual backgrounds and status reports contained in the First

---

[1] The Receivership Estates include all entities identified in the *Order Granting the Receiver's Motion to Confirm Receivership Assets/Entities* [Docket No. 40].

[2] Capitalized terms not defined herein shall have the meaning ascribed in the First Report.

Report and the Second Report. This Third Quarterly Report delineates the events and the Receiver's actions covering the period of October 1, 2015 through December 31, 2015 (the "**Third Reporting Period**").

## II.
## GENERAL OVERVIEW

2.      During the Third Reporting Period, the Receiver continued to investigate the assets and liabilities of the Receivership Estates as well as liquidate and monetize assets.  The investigation included the Receiver's negotiation with various parties regarding demand letters sent by the Receiver during the Second Reporting Period for the recovery of Receivership Estate funds.  The Receiver filed a lawsuit against several entities for the recovery of Receivership Estate funds, entered into settlement discussions with other entities in possession of Receivership Estate funds, and analyzed the potential fraudulent transfer liability of other persons, including insiders and non-insiders. The Receiver continued discussions with professionals and oil-and-gas operators in North Dakota and Texas to ascertain the ownership interests of the Receivership Estates in those areas and analyze the potential value of those assets, as well as solicit interest in acquiring those assets. Many of the tasks performed by the Receiver apply equally to each of the Receivership Estates.   Accordingly,  the  statements  and  reports  contained  within  this  Third Quarterly Report should be read to apply equally to each of the Receivership Estates except where specifically noted to apply to a specific Receivership Estate.

## III.
## THIRD REPORT

### A.      Liquidation of FF&E

3.      During  the  Second  Reporting  Period,  the  Court  authorized  the  Receiver  to liquidate the furniture, fixtures, and equipment of the Receivership Estate (the "**FFE**"), move out

of the call center in Richardson, Texas and the headquarters in Plano, Texas (collectively, the "**Office Locations**"), and to pay any costs associated therewith. The Receiver engaged Rosen Systems, Inc. ("**Rosen**") to inspect, market, and supervise the liquidation of the FFE from the Office Locations through an auction closed on September 11, 2015 (the "**Auction**"). The Auction generated $21,120.53 net to the Receivership Estates, after paying Auction expenses of $3,090.59. During the Third Reporting Period, on October 8, 2015, the Receiver deposited a check in the amount of $21,120.53 representing the net income received from the Auction.

4.      After the Auction, winning bidders took possession of the FFE located at the Office Locations. The Receiver supervised the removal of remaining FFE at the Office Locations that was not sold at the Auction, and took possession of such FFE. The remaining FFE is currently being stored at the offices of Gardere Wynne Sewell LLP.

5.      In addition to unsold FFE, which includes dozens of computers and other electronics belonging to the Receivership Estates, the Receiver is in possession and control of over 150 banker's boxes containing business records and other items of the Defendants.

6.      The Receiver promptly cleaned out the Office Locations after the removal of the remaining FFE so that they could be re-leased to new tenants. On October 2, 2015, the Receiver vacated the Office Locations.

7.      During the Third Reporting Period, the Receiver also assisted Sameer P. Sethi in ending the lease for the apartment in which Sameer P. Sethi resided.  On December 19, 2015, the Receiver supervised and assisted Sameer P. Sethi's move out of that apartment. On that date, the Receiver took possession of certain Receivership Estate assets located at the apartment for storage at the offices of Gardere Wynne Sewell LLP and inventoried the remaining assets that were moved to Sameer P. Sethi's new residence.

**B.     North Dakota Asset Investigation**

8.     As identified in the First Report and the Second Report, the Receiver's investigation has uncovered assets owned by the Receivership Estates of approximately: (a) twenty-five (25) wells operated by Hess Corp.; (b) two (2) wells permitted, but undrilled by Petro-Hunt, LLC; (c) eight (8) wells operated by G & F Oil; and (d) one (1) well operated by Slawson Exploration Company (collectively, the "**Wells**").

9.     Many of the Wells are located in North Dakota.  As such, and to confirm the results of his own investigation, the Receiver engaged a professional in Bismarck, North Dakota on August 7, 2015, to complete a "due-diligence package" of the Wells owned by the Receivership Estates in North Dakota.

10.     During the Third Reporting Period, the Receiver received and evaluated the due-diligence package regarding the Wells in North Dakota, which included information regarding interests remaining, drilling spacing units, Wells names, and operators of the Wells. Using that information, the Receiver began the process of marketing and monetizing the Receivership Estates' interests in various Wells. The Receiver contacted all operators of the Wells, as well as other third parties, to solicit their interest in acquiring such Wells. The Receiver is evaluating the various responses of the parties he contacted during the Third Reporting Period and is evaluating the next course of action regarding the Wells.

**C.     Cash on Hand / Administrative Expenses**

11.     During the Third Reporting Period, certain administrative expenses were incurred by the Receiver as a result of preservation of the Receivership Estates themselves or because of recurring charges.  For example, the Receiver incurred expenses for his legal counsel to work diligently during the Third Reporting Period to address the myriad issues that have arisen including, without limitation, following up on subpoenas to financial institutions and continued

work with the same, discovery production and disputes related thereto, conducting the deposition of Sameer P. Sethi, transporting FFE, continual investigation of assets and causes of action, negotiation of settlement agreements between the Receiver and potential insider and non-insider defendants, and other related matters.

12.      The Receiver is cognizant of the continued administrative costs associated with this case, given the comparatively nominal value of the readily identifiable assets of the Receivership Estates.  The Receiver continues to be cost conscious, while balancing the needs of the interested investors and other stakeholders.

**D.      Receipts and Disbursements**

13.      The Receiver has received and deposited one (1) check in the amount of $21,120.53 during the Third Reporting Period, as detailed below:[3]

| Deposit Date | Maker | Amount |
|---|---|---|
| 10/08/2015 | Rosen Systems | $21,120.53 |

14.      Furthermore, the Receiver incurred moving expenses in connection with vacating both Office Locations and to move unsold computers, servers, and a myriad of boxes of documents to the Receiver's offices. Additionally, the Receiver incurred expenses to change locks at the Office Locations after being appointed Receiver and taking possession of the same, and incurred additional expenses repairing the locks after turnover of the respective premises to the landlords. The Receiver made four (4) checks to the parties that assisted in those efforts totaling $2,267.46 during the Third Reporting Period, as detailed below:

---

[3] The Receiver also received and deposited a settlement check from American Express Travel Related Services Company, Inc. ("**AMEX**") on January 19, 2016. That check represents amounts from AMEX to the Receivership Estates for the settlement compromise reached by the Receiver and AMEX.  As that check was received after the Third Reporting Period, that check will be reflected on the subsequent quarterly report.

| Deposit Date | Check No. | Maker | Payee | Amount | Memo |
|---|---|---|---|---|---|
| 10/07/15 | 1002 | Marcus A. Helt Receiver | Daryl Flood Logistics | $431.00 | Sethi Boxes Move |
| 10/27/15 | 1003 | Marcus A. Helt Receiver | Action Lock Doc | $662.49 | Locksmith Invoice # 86025 (Plano) |
| 10/27/15 | 1004 | Marcus A. Helt Receiver | Action Lock Doc | $831.36 | Locksmith Invoice #86154 (Richardson) |
| 10/27/15 | 1005 | Marcus A. Helt Receiver | Action Lock Doc | $342.61 | Sethi Locksmith Repair at Richardson Location |

15.     While certain additional expenses have arguably accrued during the Third Reporting Period, the Receiver has not yet made any disbursements until he can make a determination as to the validity of these expenses and the obligation of the Receivership Estates to pay such expenses.

## E.      Receivership Property

16.     In addition to the property identified in the First Report and the Second Report, the Receiver has collected the proceeds from the Auction and deposited it into the Receivership account. After the Third Reporting Period, the Receiver deposited a settlement check from AMEX, which will be further described in the next quarterly report, noted above. The Receiver has also continued to work on monetizing "soft" and "hard" assets remaining in the Receivership Estates such as the one hundred and ninety (190) domain names and the oil-and-gas interests, respectively.

17.     Also, as identified *supra*, the Receiver is continuing his analysis of the Wells. He has spoken with various brokers and potential interested purchasers regarding a sale of the Wells for the benefit of the Receivership Estates.

F.      **Claims Held By Receivership Estate**

18.      As explained in the Second Reporting Period, the Receiver received a substantial amount of bank records and bank statements relating to the prior years of Sethi Petroleum (and related entities).  The documents produced in response to subpoenas allowed the Receiver and his professionals to develop an analysis (the "**Tracing Analysis**") of the flow of Receivership Estates' funds prior to the creation of the Receivership.  During the Third Reporting Period, the Receiver continued extensive evaluation of the bank records and bank statements produced by the various banking institutions. Such evaluation enabled the Receiver to continue developing the Tracing Analysis in order to assess sources of income, identify transfers to various insider and non-insider entities, and develop the causes of action against entities potentially in the possession of Receivership Estate assets.

19.      Creating the Tracing Analysis has been a monumental task for the Receiver and his professionals because the records of the Receivership Estates were in complete disarray and the business records were incomplete and incomprehensible on the Receiver's appointment.  The Receiver's professionals have recreated and catalogued the bank records and transfers over the last four (4) years from thirty-eight (38) bank accounts relating to the Receivership Estates as well as various credit-card statements.  As of the date of this Third Report, the Tracing Analysis contains over 12,500 entries catalogued across each of the known Receivership-Estates-related bank accounts.

20.      While the Receiver is still investigating other potential causes of actions through a forensic analysis of these bank statements, his analysis thus far has revealed claims and causes of action available for pursuit by the Receiver to potentially claw back value for valid claimants.

21.      As described in further detail in the Second Quarterly Report, the Receiver sent five (5) demand letters to various financial institutions (the "**Banks**") demanding the return of

over $1.6 million in avoidable transfers under the Texas Uniform Fraudulent Transfer Act, TEX.

BUS. & COM. CODE ANN. §§ 24.001 *et seq*. ("**TUFTA**") and other bases of state and federal law.

22.     During the Third Reporting Period, the Receiver and his professionals continued

to engage with the Banks. In fact, the Receiver entered into settlement discussions with AMEX

regarding the Receivership Estate's claims against it. The Receiver and AMEX arrived at a

settlement that represents what the Receiver believes to be a reasonable compromise after

considering and evaluating the cost benefit analysis in avoiding the uncertainty of fact-intensive

disputes related to potential litigation against AMEX and preservation of the Receivership

Estate's existing assets in procuring the settlement amount.[4] The Receiver also entered into

similar such settlement discussions with other Banks during the Third Quarterly Period.

23.     The Receiver continued to identify potential causes of action against insiders,

fiduciaries of the Receivership Estates, and other, non-insider entities.

24.     On October 28, 2016, the Receiver filed his *Receiver's Complaint to Recover*

*Avoidable Transfers and Obtain Other Relief* (the "**Sambina Litigation**") against Sambina

Properties, Ltd., Sambina Brookview Center, Ltd., Sambina Homes, Ltd., and Sambina Trust

(collectively, the "**Sambina Defendants**"), seeking the return of over $400,000 in transfers from

the Sambina Defendants.  Upon information and belief, the Sambina Defendants are owned

and/or controlled by Sameer P. Sethi's father, Praveen Sethi. The Receiver prosecuted the

Sambina Litigation during the Third Reporting Period, including successfully defending the

Sambina Defendants' *Motion to Dismiss* and filing a *First Amended Complaint to Recover*

*Avoidable Transfers and Obtain Other Relief*, after uncovering further evidence and identifying

potential causes of action against the Sambina Defendants.

---

[4] On January 12, 2016, the Receiver filed his *Receiver's Motion to Approve Compromise with American Express* [Docket No. 104], which will be further described and detailed in the Receiver's next quarterly report.

25.     The Receiver's continued efforts to identify potential causes of actions against insiders, fiduciaries of the Receivership Estates, and other, non-insider entities extended to entering into settlement discussions with Michael Davis, the former Chief Financial Officer of Sethi Petroleum, LLC. The Receiver and Michael Davis arrived at a settlement compromise, and the Court entered its *Agreed Order Granting Joint Motion to Approve Compromise* [Docket No. 86] regarding the same, which required Mr. Davis to deliver to the Receiver $76,528.22, less a $2,000 credit, not later than Friday, January 8, 2016 at 2:00 p.m. As of the date of this Third Quarterly Report, the Receiver has not yet received the funds representing the settlement amount from Mr. Davis.

26.     The Receiver continues to analyze transfers of Receivership Estates' funds and the Defendants' books and records to others and the recovery thereof under applicable state or federal law.   Some of those claims and causes of action will likely be brought against the principals, affiliates, and "insiders" of Sethi Petroleum and the Receivership Estates. The Receiver intends on prosecuting these causes of action during the next reporting periods.   The Receiver may also seek a streamlined procedure by which he can commence litigation related to this action.

## G.     Known Creditors

27.     The Receiver is aware of "recurring charges" creditors – such as internet-service providers, etc. – that have now ceased due to the liquidation and exit of the Office Locations. The Receiver is taking steps to determine the final amount of these alleged claims.

28.     As identified in the First Report and the Second Report, the Receiver has been informed by multiple operators of wells in which Sethi Petroleum owns an interest that Sethi Petroleum has not paid its Joint Interest Billings. The Receiver has requested from these operators additional detail in order to perform an independent verification of the amounts alleged

to be owed by these operators.  Additionally, as described in the First Report and the Second Report, information from other potential operators has been requested and may inform the Receiver of additional amounts due operators.

29.     The Receiver has compiled from records located at the headquarters and electronic files of employees a list of known investors in Sethi Petroleum (or one of its investment vehicles).  The Receiver has not independently verified that each person listed in Sethi Petroleum's record is, in fact, an investor or the amount invested.  However, according to the records located by the Receiver, there are approximately 275 investors that have invested approximately $13.5 million with Sethi Petroleum (and its related investment vehicles).  The Receiver identified the investors in the First Report and the Receiver makes no representations or acknowledgements as to the validity of the information contained in the First Report and reserves all rights to amend, modify, and contest same.

30.     At the beginning of the First Reporting Period, Sethi Petroleum was involved in eight (8) different lawsuits as defendant, plaintiff, or both.  The Receiver filed "suggestions of receivership" in each of the cases thereby staying the litigation in accordance with the Receivership Order.  The Receiver has conferred with most of the parties (or their respective counsel) to the litigation in an effort to gather sufficient information to enable the Receiver to make an informed decision regarding the merits of the litigation.  Those discussions are still ongoing.

**H.     Investor Communications**

31.     In addition to the website established by the Receiver to keep investors up to date of the status of the Receivership, the Receiver has continued to field and return phone calls from concerned investors on the dedicated phone number established during the First Reporting

---

Period.  The Receiver has communicated with at least thirteen (13) investors – some on multiple occasions – regarding the case during the Third Reporting Period.

## I.      Creditor Claims Proceedings

32.      The Receiver has not yet requested the Court approve creditor-claim procedures. The Receiver will request approval of creditor-claim procedures only after the Receiver has confirmed that there will be assets available for distribution.

33.      For example, during the Third Reporting Period and on November 16, 2015, the Receiver filed his *Receiver's Second Notice Relating to First Interim Fee Applications* [Docket No. 78] (the "**Second Fee App Notice**").  Through the Second Fee App Notice, the Receiver informed interested parties that he "had not yet confirmed sufficient assets in the Receivership Estates to seek compensation for the Receiver and Gardere."  *See Second Fee App Notice* at p. 1, ¶ 3.  Accordingly, the Receiver has not sought entry of a creditor-claim procedure at this time.

## J.      Court Proceedings / Case Administration

34.      On September 4, 2015, Praveen Sethi filed his *Motion to Unfreeze Assets, or in the Alternative, to Modify the Preliminary Injunction Affecting Praveen Sethi's Assets* [Docket No. 65] (the "**Praveen Motion**") and Shahnaz Sethi filed her *Motion to Unfreeze Assets* [Docket No. 66] (the "**Shahnaz Motion**" and together with the Praveen Motion, the "**Unfreeze Motions**").  Both of the Unfreeze Motions seek an order from this Court to unfreeze certain bank accounts allegedly in the name of Shahnaz or Praveen (and or their entities).

35.      On September 14, 2015, the Receiver filed his responses to the Unfreeze Motions [Docket Nos. 68 and 69] informing the Court of potentially traceable transfers to Praveen Sethi and Shahnaz Sethi and requesting an evidentiary hearing on the Unfreeze Motions.

36.      On September 30, 2015, the Court entered an order granting the Receiver's request for an evidentiary hearing on the Unfreeze Motions and set evidentiary hearings on

November 23, 2015.  The Court also authorized expedited discovery in connection with the Unfreeze Motions.  *See* Docket Nos. 74 and 75.

37.    On November 18, 2015, the Court entered its *Order Continuing Evidentiary Hearing on Praveen Sethi's Motion to Unfreeze Assets, or In the Alternative, to Modify the Preliminary Injunction Affecting Praveen Sethi's Assets*, setting January 6, 2016 as the date of the hearing on the Unfreeze Motions. That court order required all discovery related to the Unfreeze Motions to be completed by December 30, 2015.

38.    On November 19, 2015, the Receiver timely responded to Praveen's discovery requests to the Receiver. In total, the Receiver produced 216 documents comprising 16,388 pages of materials responsive to Praveen's discovery requests.

39.    On December 10, 2015, the Receiver filed his *Motion to (a) Compel Production of Documents by Praveen Sethi, (b) Continue the Hearing on Shahnaz and Praveen Sethi's Motions to Unfreeze Assets, and (c) Set Motion to Compel for Hearing on January 6, 2015* [Docket No. 82]. The Court heard the matters concerning the matters relating to the Unfreeze Motions after the Third Reporting Period. The Receiver will describe the events related thereto in his next quarterly report.

40.    On December 4, 2015, the Receiver took Sameer P. Sethi's deposition in furtherance of his investigation relating to the Unfreeze Motions. The Receiver deposed Sameer P. Sethi on matters relating to Sameer P. Sethi's current occupation, his and Praveen Sethi's authority and control over the Receivership Estate, withdrawals and transfers of Receivership Estate assets, solicitation of investments and use of investor funds, the fraudulent nature of his and Sethi Petroleum, LLC's activities, and other related matters. At the deposition, Sameer P. Sethi pled the Fifth Amendment on virtually every question asked.

41.     On December 11, 2015, a week after the deposition, Sameer P. Sethi's attorneys filed their *Unopposed Motion for Withdrawal as Counsel of Record for Sameer P. Sethi and Brief in Support* [Docket No. 83] (the "**Motion for Withdrawal**"), requesting the removal of Aaron Z. Tobin, Kendal B. Reed, and the law firm of Anderson Tobin PLLC as counsel for Sameer P. Sethi. The Court granted the Motion for Withdrawal on December 18, 2015 [Docket No. 87]. Sameer P. Sethi retained Anthony Green of Anthony Green Law as his new counsel. *See* Docket No. 92.

42.     On December 29, 2015, American National Bank of Texas ("**ANB**") filed its *American National Bank of Texas's Motion to Intervene* (the "**Motion to Intervene**") [Docket No. 90]. ANB filed the Motion to Intervene in order to interplead disputed funds maintained in bank accounts at ANB which are subject to competing claims in the case. The Court granted the Motion to Intervene on January 20, 2016 [Docket No. 107].

**K.     Receiver's Recommendations**

43.     While the Receiver has seized control of readily identifiable assets and operations and begun his diligence of identifying additional assets and liabilities, it is too soon to make a final recommendation as to when this Receivership case will be resolved.  Accordingly, the Receiver recommends that the receivership continue to allow the Receiver additional time to locate assets and determine how to resolve the Receivership Estates.

Dated:  February 1, 2016

Respectfully submitted,

*/s/ Michael S. Haynes*
Michael S. Haynes (TX 24050735)
Matthew J. Pyeatt (TX 24086609)
**GARDERE WYNNE SEWELL LLP**
1601 Elm Street, Suite 3000
Dallas, Texas  75201
(214) 999-4667 (facsimile)
(214) 999-3000 (telephone)
mhaynes@gardere.com
mpyeatt@gardere.com

**COUNSEL FOR THE
RECEIVER, MARCUS A. HELT**

## Certificate of Service

The undersigned hereby certifies that on February 1, 2016, a true and correct copy of this document was served *via* the Court's PACER system.

*/s/ Michael S. Haynes*
Michael S. Haynes

Gardere01 - 7638017