UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Case No.:  4:15-CV-00338 |
| **SETHI PETROLEUM, LLC and SAMEER P. SETHI,** | § § § § | |
| **Defendants** | § § | |

**PLAINTIFF'S MOTION TO ENTER
JUDGMENT AND BRIEF IN SUPPORT**

Plaintiff Securities and Exchange Commission ("Commission") respectfully requests entry of a final judgment against Sameer P. Sethi, respectfully showing the following:

**I.
SUMMARY OF REQUESTED RELIEF**

In granting the Commission's Motion for Summary Judgment on December 16, 2016, the Court found that Sameer P. Sethi ("Sethi") defrauded investors of Sethi Petroleum, LLC ("Sethi Petroleum") in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.  The Court also found Sethi jointly and severally liable for Sethi Petroleum's Exchange Act violations under Section 20(a) of the Exchange Act.

The Commission now respectfully moves the Court to determine the appropriate remedies against Sethi in light of his violations of the law.  Specifically, the Commission requests an order from the Court (1) permanently enjoining Sethi from future violations of the relevant securities laws; (2) permanently enjoining Sethi from soliciting investors in the purchase

or sale of securities[1]; (3) requiring Sethi to disgorge all ill-gotten gains received as a result of wrongdoing, plus prejudgment interest; and (4) requiring Sethi to pay appropriate civil penalties.

## II.
## ARGUMENT AND AUTHORITY

**A.    PERMANENT INJUNCTIONS**

Section 21(d) of the Exchange Act contemplates entry of permanent injunctions in enforcement actions brought by the Commission when the evidence establishes a "reasonable likelihood" that a Defendant will engage in future violation of the securities laws. *See* 15 U.S.C. §77t(b); 15 U.S.C. § 78u(d)(1); *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *see also SEC v. Koracorp Indus., Inc.*, 575 F.2d 692 (9th Cir. 1978), *cert. denied sub nom., Helfat v. SEC*, 439 U.S. 953 (1978). "[T]he Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a 'reasonable likelihood' of future transgressions." *Zale Corp.*, 650 F.2d at 720; *see SEC v. Caterinicchia*, 613 F.2d 102 (5th Cir. 1980); *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1973). In predicting the likelihood of future violations, the Court should evaluate the totality of the circumstances. *Zale Corp.*, 650 F.2d at 720.

Courts consider a number of factors when imposing permanent injunctions, including the (1) egregiousness of the defendant's conduct; (2) isolated or recurrent nature of the violation; (3) degree of *scienter*; (4) sincerity of the defendant's recognition of his transgression; and (5) likelihood of the defendant's job providing opportunities for future violations. *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009); *Blatt,* 583 F.2d at 1334-35.

---

[1] Plaintiff does not request the Court to enjoin Sethi from the purchase or sale of listed securities on his own account.

**The Court Should Permanently Enjoin Sethi**

Consideration of these factors clearly supports entry of permanent injunctions against Sethi, whose violations were multiple, continued, egregious, and undertaken with *scienter*. The Court found that Sethi committed securities fraud by repeatedly claiming existing partnerships with major oil companies when in fact, his company's only interests were with Irish Oil & Gas, Inc., a small, private oil company. (December 16, 2016 Memorandum and Order, Dkt. 232 ("Dec. 16 Order"), pp. 19-21).

Sethi's violations were egregious. He deceived investors with repeated lies, fraudulently raising over $4 million from unsuspecting investors. (*Id*., at p. 4). Compounding his liability, and showing utter disregard for the authority of this Court, on the very day after he was preliminarily enjoined by the Court for his conduct with Sethi Petroleum, Sethi began setting up an entity, Cambrian Resources, LLC, for the purpose of "evad[ing] the Court's injunction and continue utilizing Sameer's skills in selling securities." (August 9, 2016 Memorandum and Order, Dkt. 169 ("Contempt Order"), p. 14).

Sethi's violations were, by their nature, recurrent and repetitive. Setting up and supervising a cold-call boiler room, Sethi personally instructed callers on what lies to tell and trained them in his own system of telephone securities sales. At his direction, Sethi's callers cast a net across the nation, eventually ensnaring more than 90 investors from 28 different states in the NDDF investment alone. (Dec. 16 Order, p. 4). In order to raise over $4 million in the NDDF investment, Sethi's lies had to be repeated thousands of times.

Moreover, Sethi's conduct in connection with NDDF was not an isolated incident for him. Sethi and his companies have already been the subject of orders to cease and desist the purchase and sale of unregistered securities in the states of Pennsylvania (2006) and Colorado

(2009). (Pl.'s Mot. for Summ. J. ("MSJ"), Dkt. 195, p. 4). Sethi immediately violated Colorado's cease-and-desist order, leading to a permanent injunction against him in that state in 2010. (*Id.*).

Furthermore, Sethi displayed a high level of *scienter* as evidenced by his intentional misrepresentations and disregard for the rule of law. Knowing that NDDF's only interests had been purchased from small Irish Oil & Gas, Inc., Sethi wooed potential investors using a "cold call regime . . . built around touting the company's established relationships in the oil and gas industry and promising that the wells would produce one million barrels of oil per month from a major oil and gas company . . . ." (Dec. 16 Order, pp. 16, 19-20). Knowing that he had already sued to rescind even those meager assets – NDDF's only holdings – Sethi continued to represent major partnerships and existing, producing, wells to potential investors. (MSJ, p. 9). Sethi's state of mind throughout the scheme and during his many misrepresentations is clear, as he squandered nearly all of the investors' money. (MSJ, p. 25).

Considering the factor of recognition of his transgressions, Sethi has never admitted wrongdoing or even acknowledged his deceptions. Whenever called for testimony in this action or in the related contempt proceeding, Sethi invoked his Fifth Amendment privilege and declined to testify. (Dec. 16 Order, pp. 4, 7-8). Quite beyond the mere failure to personally acknowledge his wrongdoing, however, on the day after his agreed preliminary injunction, Sethi immediately embarked on a mission to defy that order of this Court. This conduct, mentioned above and described at length in the Contempt Order, is the antithesis of a defendant's sincere recognition of transgression. Sethi's refusal to curb his transgressive behavior or even acknowledge his past transgression requires permanent injunction from the Court.

Finally, the risk of Sethi's recidivism is extremely high. This is not mere speculation about the future. Sethi is an established securities recidivist, having violated the laws of Pennsylvania and Colorado, and requiring a contempt order to prevent him from continuing to violate federal securities laws and this Court's preliminary injunction. Sethi's repeated disregard for the securities laws and the authority of the Court show that he is a great risk to continue his pattern of violations and securities fraud. Accordingly, the Court should enter permanent injunctions preventing Sethi from conducting securities transactions and committing further violations of the law.

Because these factors weigh uniformly and heavily against Sethi, the Court should permanently enjoin him from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. The Court should also permanently enjoin him from soliciting investors in the purchase or sale of securities.

**B.    THE COURT SHOULD ORDER SETHI TO DISGORGE HIS ILL-GOTTEN GAINS WITH PREJUDGMENT INTEREST**

"The District Court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *SEC v. Huffman,* 996 F.2d 800, 802 (5th Cir. 1993); *see also SEC v. AMX, Int'l, Inc.,* 7 F.3d 71, 73 (5th Cir. 1993); *SEC v. AmeriFirst Funding, Inc.,* 2008 U.S. Dist. LEXIS 36782 (N.D. Tex. 2008); *SEC v. Reynolds*, 2008 U.S. Dist. LEXIS 65669 (N.D. Tex. 2008). The law does not require precision in determining the amount of disgorgement. Rather, "disgorgement need only be a reasonable approximation of profits causally connected to the violation." *Id.*; *see also Allstate Ins. Co v. Receivable Fin. Co. LLC*, 501 F.3d 398, 413 (5th Cir. 2007) ("In actions brought by the SEC involving a securities violation, 'disgorgement need only be a reasonable approximation of profits causally connected to the violation.'"). As one court explained:

> If exact information were obtainable at negligible cost, we would not hesitate to impose upon the government a strict burden to produce that data to measure the precise amount of the ill-gotten gains. Unfortunately, we encounter imprecision and imperfect information. . . . Rules for calculating disgorgement must recognize that separating legal from illegal profits exactly may at times be a near-impossible task.

*SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1231 (D.D.C. 1989).

Once the Commission presents evidence reasonably approximating the amount of ill-gotten gains, the burden of proof shifts to the remaining Defendants. *See SEC v. ConnectAJet.com, Inc.*, 2011 U.S. Dist. LEXIS 130215, 2011 WL 5509896, at *7 (N.D. Tex. Nov. 9, 2011); *AmeriFirst Funding, Inc.*, 2008 U.S. Dist. LEXIS at *4; *First City*, 890 F.2d at 1232; *see also SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D.N.J. 1996), *aff'd*, 124 F.3d 449 (3rd Cir. 1997). Defendants are then "obliged clearly to demonstrate that the disgorgement figure [is] not a reasonable approximation." *First City*, 890 F.2d at 1232; *see also Reynolds*, 2008 U.S. Dist. LEXIS at *7; *SEC v. Benson*, 657 F. Supp. 1122, 1133 (S.D.N.Y. 1987).

"In the context of an offering of securities in violation of the securities laws, the proper starting point for a disgorgement award is the total proceeds received from the sale of the securities." *SEC v. Rockwell Energy of Texas, LLC*, No. H-09-4080, 2012 WL 360191, at *3 (S.D. Tex. Feb. 1, 2012) (quoting *SEC v. AmeriFirst Funding, Inc.*, 2008 WL 1959843, at *2 (N.D. Tex. May 5, 2008)); *SEC v. Platforms Wireless International Corp.*, 617 F.3d 1072, 1081, 1096-97 (9th Cir. 2010) (holding that the SEC had reasonably approximated defendant's profits from illegal sales of unregistered Pink Sheet securities by tabulating total proceeds from those sales). In determining an approximate amount of ill-gotten profits, "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty." *Hughes,* 917 F. Supp. at 1085; *SEC v. Strauss*, 2011 U.S. Dist. LEXIS 38248 (N.D. Miss. 2011). "[D]oubts are to be resolved against the defrauding

party." *SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983); *see also Hughes*, 917 F. Supp. at 1085. Further in attempting to mitigate liability, "securities law violators may not offset their disgorgement liability with business expenses." *SEC v. Rockwell Energy*, 2012 WL 360191, at *3 (citing *SEC v. United Energy Partners*, 88 F. App'x 744, 746–47 (5th Cir. 2004)).

### 1. Sethi Should Disgorge $4,028,264.81.

From January 28, 2014 through March 9, 2015, Sethi raised $4,028,264.81 from NDDF investors. (Dec. 16 Order, p. 4; MSJ Appx., Dkt. 4-14, App. 641, 673-76). The Court found that Sethi used multiple misrepresentations about his company's existing partnerships with major oil companies to raise this amount from investors. (Dec. 16 Order, pp. 20-22). Because of his misrepresentations, the Court found Sethi personally liable for his violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 17(a) of the Securities Act. (*Id*., p. 24). The Court also found Sethi jointly and severally liable with his company under Section 20(a) of the Exchange Act for the company's Exchange Act violation. (*Id.*). Sethi's violations enabled him to fraudulently raise $4,028,264.81, and the Court should order him to disgorge that amount.

### 2. Prejudgment Interest

The Court should add prejudgment interest to Sethi's disgorgement to prevent him from benefitting from the use of ill-gotten gains interest-free. *Blatt*, 583 F.2d at 1335; *see United Energy Partners*, 88 F. App'x at 747 (noting that it is within the court's discretion to award prejudgment interest); *SEC v. Gunn*, 2010 U.S. Dist. LEXIS 88164 (N.D. Tex. 2010).

Where, as here, a wrongdoer enjoyed access to funds over a prolonged period as a result of wrongdoing, ordering the wrongdoer to pay prejudgment interest is consistent with the equitable purpose of the remedy of disgorgement. *See Hughes*, 917 F. Supp. at 1090. By violating the

securities laws, Sethi enjoyed the benefit of funds obtained in connection with fraud on his investors for an extended period of time. For Sethi to enjoy the benefit of these funds during that time period offends basic principles of justice and equity.

The IRS underpayment of federal income tax rate, as set forth in 26 U.S.C. § 6621(a)(2), is appropriate for calculating prejudgment interest in enforcement actions. That rate "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud." *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1476 (2d Cir. N.Y. 1996).

Based on a principal disgorgement amount of $4,028,264.81, application of the tax underpayment rate from March 9, 2015 results in a total prejudgment interest amount of $276,123.74.[2] (*See* Sethi Prejudgment Interest Calculation, (Ex. A)). Accordingly, the Court should order Sethi to pay $4,304,388.55 in disgorgement and prejudgment interest.

C. **THE COURT SHOULD ORDER SETHI TO PAY A CIVIL PENALTY AND SHOULD SET THE AMOUNT OF THE PENALTY.**

Sethi violated the antifraud provisions of the federal securities laws. As discussed above, Sethi acted with *scienter* in connection with his wrongdoing. In light of his conduct, Sethi should be ordered to pay a maximum third-tier civil penalty.

Sections 21(d) and 21A of the Exchange Act provide three tiers of penalties applicable to those who violate the Act and its rules.[3] The first tier of penalties applicable to individuals under

---

[2] The Commission is entitled to seek prejudgment interest from the date the conduct began. *See SEC v. Platforms Wireless Int'l Corp.,* 2010 U.S. App. LEXIS 15328 (9th Cir. 2010) (district court did not abuse its discretion by imposing prejudgment interest from the date securities were sold, as "defendants plainly had the use of their unlawful profits for the entire period."); *SEC v. Razmilovic*, 2011 U.S. Dist. LEXIS 113447 (E.D.N.Y. 2011) (because he "had the use of [the] unlawful profits for the entire period," Defendant liable for prejudgment interest on entire amount of ill-gotten gains for entire period from time of his unlawful gains to entry of judgment). For simplicity, March 9, 2015 is when Sethi raised the final investment in connection with NDDF. Plaintiff's calculation of prejudgment interest ends on March 1, 2017, the date of this filing.

[3] Section 20(d) of the Securities Act provides the same penalty structure for violations of that statute.

Plaintiff's Motion to Enter Judgment – Page 8

the Exchange Act provides that sanctions shall not exceed the greater of $7,500 for each violation, or the amount of the person's gross pecuniary gain resulting from wrongdoing.[4] 15 U.S.C. § 77t(d). No showing of intentional or knowing wrongdoing is required in order to impose first tier penalties. The second tier of Exchange Act penalties for individuals authorizes sanctions not to exceed the greater of $80,000 for each violation, or the amount of each person's gross pecuniary gain resulting from their wrongdoing. *Id.* A second-tier penalty requires that the violation "involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* Finally, the Exchange Act provides for third tier penalties against individual wrongdoers in an amount not to exceed the greater of $160,000 for each violation, or the amount of the wrongdoer's gross pecuniary gain. *Id.* To trigger third tier penalties, a defendant's wrongdoing must involve the same sort of fraud or disregard required by the second tier and must have caused substantial losses – or at least the risk of substantial losses – to others. *Id.*

### Sethi's Conduct Merits Imposition of a Civil Penalty

Civil penalties are designed to punish the individual violator and deter future violations of the securities laws. *SEC v. Kenton Capital, Ltd.*, 69 F. Supp.2d 1, 17 (D.D.C.1998); *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996). And while the statutory tier determines the range of maximum penalties allowed per violation, the actual amount of the penalty to be imposed is left to the Court's discretion. *See SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005); *SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 567 (S.D.N.Y. 2009).

The following factors are relevant in determining whether a civil penalty is appropriate and, if so, in what amount:

---

[4] Sethi's violations occurred between March 5, 2013 and November 3, 2015. Therefore, the relevant adjustment of civil monetary penalties is the adjustment issued in 2013. 17 C.F.R. § 201.1005.

Plaintiff's Motion to Enter Judgment – Page 9

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's *scienter*; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Razmilovic*, 2011 U.S. Dist. LEXIS 113447 (E.D.N.Y. 2011); *see also SEC v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d 467, 503 (S.D.N.Y. 2009). Each of these factors, with the exception of Sethi's financial condition, has been discussed above. As has been shown, each of the discussed factors weighs heavily in favor of assessing a maximum third-tier penalty. As to the final factor, there is no basis to forego, much less reduce, civil penalties against Sethi based on his current or foreseeable financial condition, especially given the financial codependence of Sameer and his father, Praveen Sethi, as demonstrated during the contempt proceedings.

Consequently, the Commission asks the Court to order Sethi to pay a third-tier civil penalty in an amount it deems appropriate. If the Court believes it appropriate to base the penalty on pecuniary gain, that amount has been discussed above. In the event the Court believes it more appropriate to measure the civil penalty based on Sethi's violations, the Commission has set out below the potential range of such a penalty, including for the Court's convenience, the ranges applicable for all Tiers.

| Defendant | 3rd Tier Low Max | 3rd Tier High Max | 2nd Tier Low Max | 2nd Tier High Max | 1st Tier Low Max | 1st Tier High Max |
|---|---|---|---|---|---|---|
| Sethi[5] | $800,000 | $4,028,264 | $400,000 | $4,028,264 | $37,500 | $4,028,264 |

---

[5] These figures treat Sethi's fraud scheme as a total of 5 violations: one for each misrepresentation about major oil company partnerships cited by the Court. (Dec. 16 Order, pp. 20-21). While this results in a significant penalty amount, plaintiff notes that it is a relatively conservative methodology in Sethi's favor, given that there are literally scores of violative acts from which to choose (counting each defrauded investor or counting each lie told to each investor, for example). Courts have significant discretion in selecting the method used to determine a penalty. It can be measured either by the amount of pecuniary gain to the defendant or by multiplying the statutory amount by the number of violations that the court finds were committed by the defendant. *See, e.g., SEC v. Cavanagh*, 2004 WL 1594818, at *31 (S.D.N.Y. July 16, 2004) (multiplying number of fraudulent sales or offers to sell by the

## III.
## CONCLUSION

For all of these reasons, the Court should enter final judgment against Sameer Sethi consistent with the Court's findings, including an order of disgorgement with prejudgment interest; imposition of civil penalties; and permanent injunctions.

Respectfully submitted,

DATED:  March 1, 2017 */s/Matthew J. Gulde*
MATTHEW J. GULDE
Illinois Bar No. 6272325
TIMOTHY L. EVANS
Texas Bar No. 24065211
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX  76102-6882
(817) 978-1410
(817) 978-4927 (fax)
guldem@sec.gov

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION

---

number of statutes violated to compute maximum penalty amount); *see also SEC v. Coates*, 137 F. Supp. 2d 413, 424, 430 (S.D.N.Y. 2001) (holding misrepresentations of separate facts in communications with investors constituted distinct Exchange Act violations); *See also SEC v. Robinson*, 2002 WL 1552049, *12 (S.D.N.Y. 2002) (noting that each sale of common stock could be deemed a separate violation, despite ultimately accepting Commission's recommendation of lesser penalty); *SEC v. Milan Capital Group, Inc.,* 2001 WL 921169, at *3 (S.D.N.Y. Aug. 14, 2001) (holding defendants who sent false offering materials to 200 investors committed "at least 200 violations of the Exchange Act" for purposes of setting a penalty under Section 21(d)).

## CERTIFICATE OF SERVICE

On March 1, 2017, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the Court.

*/s/ Matthew J. Gulde*
Matthew J. Gulde