**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Case No.: 4-15-cv-00338-ALM** |
| **SETHI PETROLEUM, LLC and SAMEER P. SETHI,** | § § § | |
| **Defendants.** | § § | |

**DEFENDANT SAMEER SETHI'S COMBINED MOTION TO AMEND FINDINGS AND
RESPONSE TO PLAINTIFF'S MOTION TO ENTER JUDGMENT**

Defendant Sameer Sethi respectfully requests this Court amend its findings in the Court's Amended Memorandum Opinion and Order of January 17, 2017 (Dkt. 238) and, in addition and on the basis thereof, deny Plaintiff's Motion to Enter Judgment (Dkt. 252) and re-hold a final pretrial conference.

## <u>MOTION TO AMEND FINDINGS</u>

Based on Fed. R. Civ. P. 52(a)(5), Defendant respectfully questions the evidentiary support of this Court's findings in its Amended Memorandum Opinion and Order of January 17, 2017 ("Summary Judgment Opinion") (Dkt. 238), and requests that, based on the below argument, the findings and order of the Summary Judgment Opinion be appropriately amended to deny Plaintiff's Motion for Summary Judgment (Dkt. 195), and Plaintiff's Motion to Enter Judgment (Dkt. 252) be denied based on the amendments. This Court has the power to amend or make additional finding on a party's motion, even up to 28 days after the entry of judgment. Fed. R. Civ. P. 52(b). Here, Defendant's request is timely made before the entry of judgment.

### *The Operators Working with Sethi Petroleum LLC Were, In Fact, Major Oil Companies*

On January 17, 2017, this Court found in its Summary Judgment Opinion that "[t]he operators of the acquired wells were Crescent Point Energy U.S. Corp., Oxy USA Inc., and Slawson Exploration Co." (Dkt. 238 at 2.; Pl.'s App. at 311.) Based on these relationships with seemingly non-major companies, this Court found that "summary judgment should be granted only as to the misrepresentations of partnerships with major oil companies." (Dkt. 238 at 19.) As to the other claims of fraud, "[s]ummary judgment [was] therefore denied for all other alleged allegations." (*Id.*)

Defendant believes that the Court offers the listing of Defendant's well operators in the initial section of its Summary Judgment Opinion as a counterpoint to the claim that Sethi Petroleum LCC worked with major oil companies. Given that the three operators do not seem to advertise to the public and seem not to be well-known, the Court's recollection of the operators seems to be a list of non-major companies that supports the grant of summary judgment; however, it is a list necessitating denial of summary judgment.

Each operator cited by the court is a major oil and gas company. Crescent Point Energy U.S. Corp. trades on both the New York Stock Exchange and Toronto Stock Exchange (http://www.crescentpointenergy.com/invest, accessed March 22, 2017) and has a market capitalization of $7.68 billion (https://finance.yahoo.com/quote/cpg.to?ltr=1, accessed March 22, 2017). Oxy USA Inc. is a business unit of Occidental Petroleum, a global oil company that is one of the largest publicly traded oil companies in the world, which boasts a market capitalization of over $43 billion (https://finance.yahoo.com/quote/OXY?ltr=1, accessed March 22, 2017) and trades on the New York Stock Exchange. Slawson Exploration Co. is "one of the nation's biggest privately held oil companies" and has drilled over 3,000 wells.

(https://www.forbes.com/profile/slawson/, accessed March 22, 2017.)  In addition, the Receiver

found that "[a]ccording to information contained in files located at the HQ and electronic files of

Sethi Petroleum's employees, Sethi Petroleum (or one of its investment vehicles) appears to own an

interest in: (a) twenty-five (25) wells operated by Hess Corp…." (Dkt. 61 at 14). Hess Corp. is a

global oil company that trades on the New York Stock Exchange and has a market capitalization of

$14.83 billion. (https://finance.yahoo.com/quote/HES?ltr=1, accessed March 22, 2017.) With the

exception of Slawson Exploration Co., who's financial performance and size are private, each of the

companies above safely qualifies under the standard definition of a large cap company. (See

http://www.investopedia.com/terms/l/large-cap.asp, accessed March 22, 2017.)

Defendant believes that the Court may have been unaware of the size of the companies that

it correctly cites as operators of the acquired wells. In view of these companies' large

capitalizations and extensive operations, it becomes clear that the representations of Sethi

Petroleum LLC were not fraudulent; rather, they were factually based on an existing relationship.

Further, the future-looking statements of working with major oil companies to operate interests

obtained through the North Dakota Drilling Fund ("NDDF") were correct representations that

came to fruition with the very first set of wells acquired by the fledgling operation.

Even though Sethi Petroleum's operators were major oil companies, Defendant's experience

in the oil and gas industry is such that he has found them to not be household names. Thus,

Defendant was in the practice of employing the phrase "such as Exxon" or "such as Conoco."

This tool simplified his interactions without sacrificing the truth or misleading his listener, and it

avoided creating an extra hassle of having to show listeners that current and future operators

were major companies. The companies cited in Defendant's analogies were not necessarily

larger or more "major" than the companies Sethi Petroleum currently and ultimately began to

work with, they were simply more well known. This facilitated a correct understanding of

present and future operations. Simply put, major oil and gas companies were promised, and

when the time came to begin acquiring wells, major oil and gas companies operated those wells.

Having considered the nature of Sethi Petroleum's operators, the Court's findings as to the

import of these statements take on a different meaning. It is thus appropriate that "[e]ach of these

statements would lead a reasonable investor to believe that Sethi Petroleum had present

relationships with major oil and gas companies at the time that the statements were made" (Dkt.

238 at 21), because the relationship with Hess Corp. actually existed. Further, the Court found

"the 'total mix' of information based on the relative sophistication between Sethi Petroleum and

its investors was that these relationships were currently existing, and that larger relationships

may develop as the investors pour in" (Dkt. 238 at 20.), which is appropriate because those other,

larger relationships did develop at the time of the NDDF's first acquisition of wells operated by

Oxy USA Inc. and others.

### Defendants' Truthful Representations Necessitate Amended Findings and an Amended Order Denying Plaintiff's Motion for Summary Judgment

The trial court "must resolve all reasonable doubts in favor of the party opposing motion for

summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th

Cir. 1981). To meet the burden of proof for summary judgment requires evidence that establishes

"beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn

Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Now that Sethi Petroleum's operators are known to be

major oil companies, the affirmative evidence of their association requires amended findings.

"To commit securities fraud in violation of Section 10(b) and Rule 10b–5, a defendant must

act intentionally or with severe recklessness, which is defined as a 'highly unreasonable omission

or misrepresentation.'" *SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009) (citing *Ind. Elec.

Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 533 (5th Cir. 2008)). As

seen above, Defendants' assertions of partnering with major oil companies are not

misrepresentations because Sethi Petroleum LLC did, in fact, hold interests in wells operated by

a major oil company and did, through the NDDF, acquire other interests in wells operated by

major oil companies, in accord with representations. Thus, Defendants' true statements cannot be

held to be securities fraud. In amending its findings in the Summary Judgment Opinion, this

Court should find that a genuine dispute of material fact exists, and summary judgment should be

denied. Fed. R. Civ. P. 56(a).

**RESPONSE TO MOTION TO ENTER JUDGMENT**

Defendant's request to amend findings, if granted, obviates the need to respond to Plaintiff's

Motion to Enter Judgment (Dkt. 252), since an amended Summary Judgment Opinion would no

longer provide a basis for judgment; however, if the court determines that it cannot amend its

Summary Judgment Opinion, Defendant humbly offers this Response.

***Permanent Injunctions are Inappropriate When No* Scienter *is Present***

*Scienter* is an element of securities fraud under Section 17(a)(1) of the Securities Act,

Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder. The SEC must

prove by a preponderance of the evidence that a misstatement of a material fact was made and

that it was made with *scienter. SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009). Defendant

incorporates herein and references the above argument that the statements found to be fraudulent

by the Court in its Summary Judgment Opinion were in fact true. As such, no *scienter* is present,

since no fraud is present.

In the event that the Court cannot acknowledge the truth of Defendant's statements,

Defendant would show that his reliance on counsel shows an absence of an intent to defraud. A

"good faith reliance on the advice of counsel is a means of demonstrating good faith and

represents possible evidence of an absence of any intent to defraud." *U.S. v. Peterson*, 101 F. 3d 375, 381 (5th Cir. 1996). The SEC's investigators found that Sethi Petroleum regularly consulted with attorneys. (See, e.g., the SEC's calculation of Sethi Petroleum LLC's legal expenses, summarized in Pl.'s App. at 696 (showing that legal expenses composed 3.1% ($126,356.88) of operational expenditures).) During Sethi Petroleum LLC's operation of the NDDF, exactly ten law firms were employed to render advice and work to Sethi Petroleum LLC on matters ranging from purchase agreements to drafting the very communications printed for the use of potential joint venturers. (See Pl.'s App. at 680-81). During the August 1, 2016 hearing, testimony was given detailing efforts to craft NDDF offering documents with the help of competent legal help, that help consisting of employing a Harvard law graduate. Such repeated reliance on counsel would not be found if Defendant's purpose was to defraud. Significant legal expenses would likely have been avoided.

Defendant would additionally argue that he has presented unrebutted testimony, via the affidavit of John Weber, a former Sethi Petroleum employee, that Defendants nearly constantly relied on the advice and counsel of Michael R. Davis (Dkt. 220-1). As noted on Sethi Petroleum LLC stationary and literature, Mr. Davis represented himself to investors as General Counsel for Sethi Petroleum LLC. (Pl.'s App. at 708). Mr. Davis also represented himself as an accountant (Dkt. 220-1) and the Chief Financial Officer of Sethi Petroleum LLC (Pl.'s App. at 486), which is notable because Fifth Circuit courts hold a corresponding principle regarding reliance on an accountant. *SEC v. Snyder*, 292 Fed. Appx. 391, 406 (5th Cir. 2008). According to the Fifth Circuit Court of Appeals, a "jury is free to decide for itself whether the facts demonstrate that the defendant acted with *scienter* in light of the advice he received from his attorneys or accountants." *Snyder*, 292 Fed. Appx. at 406.

Defendants relied on Mr. Davis's opinions as to the legality of statements concerning major

oil companies, and, based on Mr. Davis's opinion, made representations of working with Hess

Corp. and planning to work with other major oil companies like Hess Corp. in the future (which

he later did when he acquired wells operated by other major oil companies). Upon advice of Mr.

Davis, such statements of relationships with major oil companies were either made with direct

reference to Sethi Petroleum's existing relationships with Hess Corp. (see, e.g., the NDDF

Private Placement Memorandum ("PPM") at Pl.'s App 43 under Prior Activities(iv) ("…it was

later determined that all funds raised would be applied to one well drilled by HESS Corporation

located in Williams County, North Dakota. The well was drilled to a total measured depth of

approximately 19,800 feet and is currently commercially producing.")), via analogy (see, e.g.,

the NDDF PPM at Pl.'s App. 22 in the first paragraph of the first page of the PPM ("These wells

will be drilled and operated by such oil companies as Continental Resources (CLR), Exxon

Mobil (XOM), Hess Corporation (HESS), Conoco Phillips (COP), and others…")), or via

forward-looking statements (see, e.g., the NDDF PPM at Pl.'s App. 39 under the heading

Operating Agreement ("As of the date of this Memorandum, it is anticipated that Continental

Resources (CLR), Exxon Mobil (XOM), Hess Corporation (HESS), Conoco Phillips (COP) and

various other major or publicly traded companies with no affiliation with Sethi Petroleum, will

serve as the field Operators of the Proposed Wells."))

***Other Factors Do Not Weigh in Favor of Imposing a Permanent Injunction***

Courts consider a number of factors when imposing permanent injunctions, including the (1)

egregiousness of the defendant's conduct; (2) isolated or recurrent nature of the violation; (3) degree

of *scienter*; (4) sincerity of the defendant's recognition of his transgression; and (5) likelihood of the

defendant's job providing opportunities for future violations. *SEC v. Gann*, 565 F.3d 932, 940 (5th

Cir. 2009); *SEC v. Blatt,* 583 F.2d at 1334-35. Section 21(d) of the Exchange Act contemplates entry

of permanent injunctions in enforcement actions brought by the Commission when the evidence establishes a "reasonable likelihood" that a Defendant will engage in future violation of the securities laws. See 15 U.S.C. §77t(b); 15 U.S.C. § 78u(d)(1); *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); see also *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692 (9th Cir. 1978), cert. denied sub nom., *Helfat v. SEC*, 439 U.S. 953 (1978).

As we have found in the practice of Mr. Sethi, there is a reasonable likelihood that if he remains in the oil and gas industry he will continue to engage with lawyers to abide by securities laws. We have seen that Defendant's statements were truthful, defeating the factors for imposing permanent injunctions. Moreover, we have seen that Defendants' reliance on counsel defeats *scienter* and shows the absence of an intent to defraud.

Furthermore, the extent and legitimacy of Sethi Petroleum LLC operations show sincere efforts to profit from oil and gas exploration. Sethi Petroleum LLC owned twenty-five wells operated by Hess Corp.; acquired eight more wells operated by major oil companies; and employed three full-time attorneys as landmen to find drilling projects, two geologists to evaluate drilling locations, three persons to conduct economic evaluations of drilling projects, two employees dedicated to finding institutional investors, two sales managers, two persons to compose an IT department, and three people to manage public relations and media appearances. Excluding the salary of Mr. Davis, Sethi Petroleum LLC invested $1,257,258.18 in the human capital necessary to operate a legitimate business. (See summary amounts spent on legal expenses, corporate consulting, and marketing/registration/salesperson/employee expenses at Pl.'s App. at 696).

Finally, Sethi Petroleum LLC, despite being in the middle of funding and despite a historic downturn in oil prices, began to do what it could to make good on its promises to invest in oil and gas projects operated by major oil companies by acquiring eight wells at a cost of nearly $1,000,000 (see Pl.'s App. at 696). Additionally, two wells had already been permitted by Petro-Hunt LLC (see Receiver's Second Status Report, Dkt. 76 at p. 4, ¶ 8.). Simply put, these are not efforts to defraud

investors; they are efforts to make a profit. Defendants' conduct is not egregious in any degree; it is reasonable.

Defendant has filed a Trial Witness List in this matter (Dkt. 230). Out of a possible seventy-seven witnesses, Defendant has identified seventeen that he will call and an additional twenty-nine that he may call. This large group is generally composed of former employees of Sethi Petroleum LLC and persons who provided outside services to the business. Defendant's invocation of his Fifth Amendment right on advice of former counsel was never an attempt to avoid admitting wrongdoing; rather, it was a step towards eventually relying on the testimony of a host of others.

### Disgorgement is Inappropriate in Light of Defendant's Conduct

"The district court has broad discretion in fashioning the equitable remedy of a disgorgement order." *SEC v. Huffman,* 996 F.2d at 803. "Because disgorgement is meant to be remedial and not punitive, it is limited to property causally related to the wrongdoing at issue." *Allstate Ins. v. Receivable Finance Co.,* 501 F.3d 398, 413 (5th Cir. 2007) (internal quotation marks omitted). "Accordingly, the party seeking disgorgement must distinguish between that which has been legally and illegally obtained." *Id.* "The court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment." *SEC v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978).

As discussed above, if Defendant's Motion to Amend Findings is granted, Plaintiff's Motion to Enter Judgment must be denied. Even if Defendant's Motion to Amend Findings is not granted, disgorgement is inappropriate in this case given the legitimacy of Sethi Petroleum LLC's operations and Defendants' reliance on counsel, described above. "The District Court has broad discretion not only in determining whether or not to order disgorgement but also in

calculating the amount to be disgorged." *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993).

Here, the Court should decide not to order disgorgement for the above reasons.

**If Awarded, Calculating Disgorgement is Premature at this Time**

*An as yet Undetermined Credit for Legitimate Business Expenses Should be Granted*

"In actions brought by the SEC involving a securities violation, 'disgorgement need only be a reasonable approximation of profits causally connected to the violation.'" *Allstate Ins.,* 501 F.3d at 413 (quoting *SEC v. First City Fin. Corp.,* 890 F.3d 1215, 1231 (D.C.Cir.1989)). Business expenses that do not further a fraudulent scheme can reduce disgorgement awards. *SEC v. JT Wallenbrock & Assocs.,* 440 F.3d at 1114–15.

As argued above, Sethi Petroleum LLC invested over $1,250,000 in human capital and nearly $1,000,000 in oil and gas leasing projects. The NDDF PPM projected that roughly 10% of the capital goal of $10,000,000 would be used towards leasing and acquisition of oil and gas projects, and at the time the SEC filed this case, the NDDF had nearly reached that projection, despite only raising roughly $4,000,000. (See summary found in Pl.'s App. at 696.) What the NDDF projected was delivered on by Sethi Petroleum LLC, ahead of schedule.

Despite being overbudget for operational expenditures, the amount overbudget was not unreasonable. The PPM projected that $2,500,000 would be used for syndication, administration, and management. At the time the SEC filed suit, Sethi Petroleum LLC had spent $3,408,162.02 on marketing/registration/salespersons/employees/etc., rent/insurance/credit card payments/office/etc., and payments to Sethi Financial Group/Sameer and Praveen Sethi/Michael Davis. Defendants' practice of transferring money between accounts to pay necessary expenses was a fluid operation; the Receiver has described creating a tracing analysis as "a monumental task" because of poor record keeping. Surely, if Mr. Sethi could correct any part of his conduct,

it would be to hire accountants and consultants to draft and implement proper internal controls

and accounting procedures to ensure segregation of funds and within-budget operations.

  If disgorgement is ordered, the Court should hold a hearing to determine which expenses

were in furtherance of the stated pursuits of the NDDF and should deduct those expenses from

the ultimate disgorgement amount. If a hearing is not held, Defendant respectfully requests that

the Court order further briefing on the issue of legitimate business expenses.

*An as yet Undetermined Credit for Funds Returned to Investors Should be Granted*

  Defendants are also entitled to a credit for investor funds returned to investors through a

court-appointed temporary receiver ("Receiver"). *SEC v. AmeriFirst Funding, Inc.,* 2008 U.S.

Dist. LEXIS 36782, WL 195843 at *1, Fed. Sec. L. Rep. P 94, 717 (N.D. Texas 2008) (citing a

long string of cases supporting the proposition that investor funds should be removed from the

disgorgement amount). In *SEC v. Chemical Trust,* 2000 WL 33231600 (S.D. Fla. Dec.19, 2000),

after setting the disgorgement amount, the court concluded, "it would be inequitable to require

[the relief defendant] to disgorge funds ... not otherwise placed in the hands of third parties

beyond the reach of the investors." *Id.* at *12. Thus, investor money within reach of the investors

should reduce a defendant's disgorgement liability.

  Here, the Receiver's efforts to monetize the Receivership Estate's assets are incomplete, and

to date NDDF investors have not begun to be repaid. (Dkt. 244, Receiver's Seventh Quarterly

Report, at 10-12.) The Receiver is in ongoing discussions regarding the merits of other litigation

in which Sethi Petroleum LLC is involved, and it is possible that those litigations may

substantially increase the Receivership Estate's assets. (*Id.* at p. 9, ⁋ 25.)  As of the date of the

Receiver's Seventh Quarterly Report, which is its most recent, the balance in the receivership

bank account equaled $561,580.37. (*Id.* at 4, ⁋ 12.) That balance will almost assuredly continue

to fluctuate until the close of the receivership. This Court should deduct the amount of assets

eventually possessed by the Receivership Estate, but to follow established precedent and do so

will require waiting until the close of the Receivership.

***Civil Penalties are Wholly Inappropriate***

A civil penalty is intended both to punish the individual violator and to deter future

violations of the securities laws. *SEC v. Capital Solutions Monthly Income Fund*, LP, 28 F. Supp.

3d 887, 901 (2014). And while the statutory tier determines the range of maximum penalties for

each violation, the amount to be imposed is left to the Court's discretion. *SEC v. Kern*, 425 F. 3d

143 153 (2d Cir. 2005). "The first tier applies to any violations of the Acts. The second tier

applies to violations involving fraud, deceit, manipulation, or deliberate or reckless disregard of a

regulatory requirement." The third tier applies to any violation satisfying the second-tier criteria

that also resulted in substantial losses or created a significant risk of substantial losses to other

persons. *SEC v. Hayter*, 96 F. Supp. 3d 1299 (M.D. Fla. 2015).

"In determining the appropriate amount for civil penalties, courts consider: (1) the

egregiousness of the defendant's conduct; (2) the degree of the defendant's *scienter*; (3) whether

the defendant's conduct created substantial losses or the risk of substantial losses to other

persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the

penalty should be reduced due to the defendant's demonstrated current and future financial

condition." *SEC v. Capital Solutions Monthly Income Fund, LP*, 28 F. Supp. 3d 887, 901 (D.

Minn. 2014). It should also be noted that "civil penalties do not automatically follow from

findings of security fraud." *Id*. at 901.

As shown above, Defendants' statements were not fraudulent, so no civil penalty should be

awarded; however, if the Court does not amend its findings in accord with the above showing,

civil penalties are still inappropriate under the considerations found in *SEC v. Capital Solutions*. To determine the first consideration—egregiousness of conduct—Courts consider several other factors: "whether the conduct was flagrant or merely a technical violation; whether the defendant's violation also constituted a breach of fiduciary duty; whether the violation caused others to suffer significant financial loss; and whether the violation arose out of complex scheme to defraud." *SEC v. Perez*, 2011 WL 5597331.

If Defendant's claims of partnering with major oil companies are still held to be misrepresentations, the violation should not be considered egregious because NDDF did in fact have an interest in wells operated by a major oil company and it obtained additional wells operated by major oil companies. As of May 14, 2014, it was an accurate, in a lay person's colloquial sense of the words used, to say that Sethi Petroleum LLC "works or partners directly with a major oil company." And Occidental Petroleum, an international oil company with over $43 billion in assets, could be accurately characterized as a "huge publicly traded" company on par with ExxonMobil and ConocoPhillips. Indeed, all of the operators Sethi Petroleum LLC worked with were large cap companies and all but one were publicly traded (the exception being Slawson Exploration, which is one of the biggest privately held oil and gas companies in the country). Because these statements of "working with" and "partnering with" major oil companies were based on Sethi Petroleum LLC's association with Hess Corp., Oxy USA Inc. (a subsidiary of Occidental Petroleum), and others, these factual representations cannot even be considered technical violations. See *SEC v. First City Financial Corp.*, LTD. 890 F.2d 1215, 1228 (D.C. Cir. 1989).

Defendant has also pled an unrebutted claim of reliance on counsel, a factor that mitigates the *scienter* necessary to impose second- or third-tier penalties. Defendant had a good faith belief

that the NDDF offering documents, scripts, sales materials, and the very offering itself complied with the law. He was assured by his general counsel, by attorneys who drafted NDDF partnership documents, and by numerous other interactions with outside counsel.

Additionally, the ordinary business expenses of Sethi Petroleum were considerable. A purely fraudulent scheme would not likely have included dozens of employees including geologists, landmen, and other oil industry professionals, let alone actual interests in oil and gas wells. Purely fraudulent schemes need nothing more than a boiler room and a bank account; they do not need the large overhead business expenses incurred by Defendant. As shown above, ordinary business expenses of this nature and magnitude negate *scienter* because they show a serious attempt at operating a legitimate oil and gas investment partnership.

Unfortunately, the public nature of this litigation makes it highly unlikely that the Defendant will ever again be involved in an enterprise that sells any type of security or investment of any kind. A google search of the name "Sameer Sethi" returns various media reports, including an article in the Dallas Morning News, that have caused serious damage to his reputation. This notoriety seriously detours any potential partners and investors from ever affiliating in any future business enterprise with Defendant. Additionally, the Defendant, as the Receiver has shown, is destitute. He no longer has the means to start any business ventures resembling the NDDF. If this Court orders disgorgement, Defendant will likely be unable to repay the amount even under a decades long repayment plan, even if deductions are made for legitimate business expenses and funds returned to investors. As such, civil penalties are unnecessarily superfluous. For these reasons, Defendant requests that this Court not impose civil penalties, or, in the alternative, impose a nominal first-tier penalty.

## <u>CONCLUSION</u>

Defendant requests that this Court grant his Motion to Amend Findings by finding that Defendants did in fact work with major oil companies. Pursuant to this amended finding, Defendant requests that this Court amend its Summary Judgment Opinion and re-hold a Final Pretrial Conference to determine how best to proceed. In addition, Defendant requests that Plaintiff's Motion to Enter Judgment be denied as to all relief: that no permanent injunction against selling securities be entered, that no disgorgement amount be awarded, and that no civil penalties be assessed.

Respectfully submitted,

*/s/ Adam J. Holcomb*
Adam J. Holcomb
Texas Bar No. 24097841
P.O. Box 830284
Richardson, Texas 75083
Phone: (405) 696-7779
Fax: (214) 380-9406
adam.j.holcomb@lawyer.com
ATTORNEY FOR SAMEER SETHI

## <u>CERTIFICATE OF SERVICE</u>

On March 23, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel who have registered with the Court.

*/s/ Adam J. Holcomb*
Adam J. Holcomb