IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Case No.: 4:15-cv-00338-ALM |
| **SETHI PETROLEUM, LLC and SAMEER P. SETHI,** | § § § § | |
| **Defendants.** | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO AMEND FINDINGS**

On March 1, 2017, Plaintiff moved the Court for entry of final judgment against Sameer Sethi ("Sethi"). On March 23, 2017, Sethi responded to the Motion and, additionally, moved the Court to amend its finding of summary judgment against him and proceed to trial. (Defendant Sameer Sethi's Combined Motion to Amend Findings and Response to Plaintiff's Motion to Enter Judgment, Dkt. 256). As directed by the Court, Sethi refiled separately his Motion to Amend Findings. ("Motion," Dkt. 257). Plaintiff respectfully submits this Response in Opposition to Sethi's Motion to Amend Findings.

**I.  Introduction**

In reaching for a basis to set aside the Court's summary judgment finding, Sethi now argues that his company actually did have business relationships with "major oil companies" when he was wooing investors because two such companies were the operators of the wells in which Sethi purchased interests from Irish Oil & Gas. (Motion, pp. 2-4). Not only is this the first time Sethi has made this claim, but it is in direct contradiction to the argument he made responding to Plaintiff's motion for summary judgment. When he first addressed this issue,

Sethi argued not that he had major-company relationships, but that his forward-looking statements merely predicted his good-faith intentions to cultivate such relationships. (Dkt. 211, p. 12). Sethi chose his horse at the summary judgment stage. That horse lost, and Sethi may not now switch horses in the penalty phase of these proceedings.

Even if the Court allows Sethi's waived, self-contradictory argument, his motion still fails. In selling his investment, Sethi did not imply mere association with "major oil companies." Rather, he claimed that Sethi Petroleum was *already* "partnered directly with a couple of HUGE, PUBLICLY traded companies like Conoco Phillips, Continental, GMXR just to name a few." (Am. Mem. Opinion and Order ("MSJ Order"), Dkt. 238, p. 20). At best, Sethi now claims to have had an indirect relationship with major oil companies, something far short of his misleading claims of direct partnership.

Finally, should the Court reconsider its prior ruling on summary judgment, the record is full of Sethi's lies and misstatements in addition to his claims about direct partnership with major oil companies. Sethi's many lies to investors are undisputed, and any one of them is sufficient to support a finding of summary judgment against him. The Court should therefore deny Sethi's motion to amend its summary judgment ruling, or amend the ruling to include Sethi's additional undisputed misrepresentations.

## II.  The Court Should Not Amend Its Findings

Sethi states that he seeks relief under Federal Rule 52(a)(5). Rule 52(b) states that such motions must be filed "no later than 28 days after the entry of judgment." FED. R. CIV. P. 52(b). Thus, Sethi's motion is either late (summary judgment was ordered more than 80 days ago) or premature (Rule 52(a)(1) contemplates previous entry of a judgment under Rule 58, which has not occurred in this case). Regardless, because Rule 52 motions present "an extraordinary

remedy, requests pursuant to these rules are to be granted 'sparingly,' and only when 'dispositive factual matters or controlling decisions of law' were brought to the court's attention, but not considered. *Gutierrez v. Ashcroft*, 289 F. Supp. 2d 555, 561 (D.N.J. 2003), aff'd on other grounds sub nom. *Gutierrez v. Gonzales*, 125 F. App'x 406 (3d Cir. 2005). Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J.1987) (citing *Maldonado v. Lucca*, 636 F. Supp. 621 (D.N.J.1986)). This case does not require such an extraordinary remedy for the reasons explained below.

### a. Sethi Waived the Argument that His Company had Direct Partnerships with Major Oil Companies

For the first time in this litigation, Sethi makes the argument that operation of wells by Slawson Exploration Co. and Oxy USA, Inc. render his claims of "direct partnership" with major oil companies actually true. Not only is this argument faulty, but by failing to raise it during summary judgment, Sethi waived this argument. Further, by failing to bring this issue to the Court's attention at the relevant time, Sethi cannot satisfy an essential requirement of Rule 52 claims. *Gutierrez*, 289 F. Supp. 2d at 561. This result comports with the general rule that a litigant must raise an issue before a reply in order to avoid waiving that issue. *Morin v. Moore*, 309 F.3d 316, 328 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n. 9 (5th Cir.1995) ("[W]e do not consider issues raised for the first time in a reply brief.")). In this case, Sethi presented two briefs arguing against summary judgment, neither of which makes the claim that his statements about his current direct relationships with major oil companies were *actually* true at the time they were made. In fact, he made the exact opposite argument. *See* Section II(b), *infra.* Accordingly, Sethi has waived this argument for the purpose of amending the Court's summary judgment ruling and the Court should deny his motion.

### b. Sethi Made the Opposite Argument at Summary Judgment

In his first take on this issue, responding to Plaintiff's motion for summary judgment, Sethi stated, "the fact that Sethi Petroleum has not yet contracted with a major oil and gas operator is immaterial," arguing that, "given a chance to fully actualize the plans of the NDDF in a favorable market, affiliations with major oil and gas operators would have been formed." (Sethi's Resp. to Mot. Summ. J., Dkt. 211, p. 12). Perhaps realizing that he had overstated as "direct partnerships" his prior indirect connections to major oil companies, Sethi chose to argue that the absence of such contracts was otherwise excusable. Regardless, Sethi cannot credibly take a position that is exactly opposite to his arguments at summary judgment. For this reason alone, the Court should deny his Motion to Amend.

### c. Despite His New Argument, Sethi's Statements to Investors Were False

Throughout his sales efforts, Sethi and those speaking on his behalf told investors that his company was directly partnered with major oil companies, often listing well-known oil companies to pique investor interest. It is undisputed that Sethi and Sethi Petroleum had no actual direct business relationship with any such company. It is also undisputed that the only direct industry relationship Sethi Petroleum had was with Irish Oil & Gas, from whom Sethi purchased "the right to participate in" oil and gas wells owned by Irish. (*See, e.g.*, Dkt. 4-11, App. 440). Sethi now argues that because he acquired tiny pieces of wells that were being operated by "major oil companies," then his many claims of "direct partnership" with "major oil companies" are somehow rendered true after the fact. This is nonsense, and akin to the claim that flying coach creates a "direct partnership" with the airline.

In reality, Sethi misled investors to believe that his company had direct partnerships with major oil companies – a far cry from the well operator/fractional interest holder relationship that

actually existed.[1] For instance, he instructed his team of cold-callers to tell investors that Sethi Petroleum was already "partnered directly with a couple of HUGE, PUBLICLY traded companies like Conoco Phillips, Continental, GMXR just to name a few." (Am. Memorandum Opinion and Order ("MSJ Order"), Dkt. 238, p. 20, citing Sethi cold-call script at App. 480, emphasis in original). In an advertisement, Sethi explicitly claimed "[p]artnerships with the major Oil and Gas companies." (Dkt. 4-11, App. 482). In the NDDF executive summary, Sethi claimed to be "working directly with major oil companies . . ." (MSJ Order, p. 21, App. 204).

Sethi made all of these claims despite knowing that his company had no direct relationship with any major oil and gas company. There is no reason to amend the Court's finding of summary judgment against Sethi and the Court should deny his motion.

### d. There Are Many More Misstatements for the Court to Choose from

In any case, should the Court reconsider its ruling that Sethi misrepresented his relationships with major oil companies, Plaintiff urges the Court to consider any of the many other misrepresentations Sethi made to his investors. Any one of Sethi's many false representations is sufficient to uphold a finding of summary judgment against him. For example, Sethi falsely described his personal history as a violent felon, saying that "[a] control person of the Managing Venturer was previously indicted for aggravated assault more than twelve years ago." (Dkt. 4-7, App. 0064). He failed to mention that he was actually convicted for stabbing a man and was sentenced to four years in prison. (*Id*. at App. 0107). Sethi similarly minimized and misrepresented his and his company's serious regulatory history of securities violations in Colorado and Pennsylvania, saying "[t]hese matters were settled with minimal litigation," when,

---

[1] Notably, while he was attempting to lure investors with claims of major industry "partnerships," Sethi was suing to rescind the only deal that he had ever made on behalf of NDDF investors. (Dkt. 4-7, App. 0009). Neither current NDDF investors, nor prospective investors had any idea that Sethi was trying to divest NDDF of its only meager asset.

in fact, they resulted in cease-and-desist orders against him. (*Id.* at App. 0064, 0118 *et seq.*). Further, Sethi misrepresented the number of wells already purchased by NDDF, knowing but not disclosing that he had sued to rescind the only meager deal that he had. (Dkt. 4-14, App. 0009, 0716). He also drastically inflated the actual production of the wells in the NDDF project to entice investors, telling cold-callers to say that NDDF's wells were producing one million barrels of oil per month. (*Id.* at App. 0716). In another context, when suing Irish Oil, Sethi admitted not only that Irish had only predicted 40 barrels per day, but also that actual production was only 4 barrels per day. (Dkt. 4-7, App. 0440). Under these circumstances, Sethi's sales claim that NDDF wells were currently producing one million barrels per month was preposterous and fraudulent.

Additionally, Sethi misrepresented his repeated pattern of misuse of investors' funds, the majority of which were not spent on oil and gas investments, but rather, were used to pay Sethi Petroleum insiders. (Dkt. 4-14, App. 0638, *et seq.*). While the Court chose to grant summary judgment only as to Sethi's misrepresented business relationships, the fact that he used myriad lies to obtain and misuse investors' money is not seriously in dispute. Should the Court find the current basis of its summary judgment ruling lacking, there is ample undisputed support for other bases, as Plaintiff has previously argued. (See Pl.'s Mot. Summ. J., Dkt. 195, pp. 6-11; Pl's. Reply, Dkt. 218, pp. 7-8).

### III. Conclusion

For the foregoing reasons, the Commission respectfully requests that the Court deny Defendant's Motion.

Respectfully submitted,

DATED: April 10, 2017

*/s/Matthew J. Gulde*
Matthew J. Gulde
Illinois Bar No. 6272325
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-1410
(817) 978-4927 (fax)
guldem@sec.gov

ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION

### CERTIFICATE OF SERVICE

On April 10, 2017, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the Court.

*/s/ Matthew J. Gulde*
Matthew J. Gulde