# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:15-cv-338 |
| SETHI PETROLEUM, LLC and SAMEER P. SETHI, | § § § | Judge Mazzant |
| Defendants. | § § § | |

**RECEIVER'S EIGHTH QUARTERLY REPORT FOR RECEIVERSHIP ESTATES OF (A) SAMEER P. SETHI, INDIVIDUALLY, AND (B) SETHI PETROLEUM, LLC (JANUARY 1, 2017 – March 31, 2017)**

Marcus A. Helt, the Court-appointed Receiver (the "**Receiver**") for Sethi Petroleum, LLC's and Sameer P. Sethi's (collectively the "**Defendants**") receivership estates (together, the "**Receivership Estates**"),[1] hereby files this *Receiver's Eighth Quarterly Report* (the "**Eighth Quarterly Report**").

## I.
## BACKGROUND

1. To date, the Receiver has filed the following quarterly reports in the above-referenced proceedings:

---

[1] The Receivership Estates include all entities identified in the *Order Granting the Receiver's Motion to Confirm Receivership Assets/Entities* [Docket No. 40].

| Report | Period Covered | Date Filed |
|---|---|---|
| First Report [Dkt. No. 61] | May 14, 2015 – June 30, 2015 | July 31, 2015 |
| Second Report [Dkt. No. 76] | July 1, 2015 – September 30, 2015 | October 30, 2015 |
| Third Report [Dkt. No. 110] | October 1, 2015 – December 31, 2015 | February 1, 2016 |
| Fourth Report [Dkt. No. 129] | January 1, 2016 – March 31, 2016 | May 2, 2016 |
| Fifth Report [Dkt. No. 160] | April 1, 2016 – June 30, 2016 | August 1, 2016 |
| Sixth Report [Dkt. No. 219] | July 1, 2016 – September 30, 2016 | October 31, 2016 |
| Seventh Report [Dkt. No. 244] | October 1, 2016 – December 31, 2016 | January 30, 2017 |

This Eighth Quarterly Report delineates the events and the Receiver's actions covering the period of January 1, 2017 through March 31, 2017 (the "**Eighth Reporting Period**").

## II.
## GENERAL OVERVIEW

2.  During the Eighth Reporting Period, the Receiver continued to investigate the assets and liabilities of the Receivership Estates and liquidate and monetize assets. The investigation and related efforts included the Receiver's continued prosecution of claims and causes of action against certain insiders and non-insiders of the Receivership Estates regarding demand letters sent by the Receiver during previous reporting periods for the recovery of Receivership Estate funds, including reaching terms of settlement agreements with several such defendants. The Receiver continued exploring potential sales of oil-and-gas assets located in North Dakota and Texas. Additionally, the Receiver continued working on various administrative matters regarding the Receivership Estates, including continued communications with investors, attention to tax-related deadlines and filings, and related issues. Many of the tasks

performed by the Receiver apply equally to each of the Receivership Estates. Accordingly, the statements and reports contained within this Eighth Quarterly Report should be read to apply equally to each of the Receivership Estates except where specifically noted to apply to a specific Receivership Estate.

## III.
## EIGHTH REPORT

**A.     Storage of FF&E**

3.     During the Second Reporting Period, the Court authorized the Receiver to liquidate the furniture, fixtures, and equipment of the Receivership Estate (the "**FFE**"), move out of the call center in Richardson, Texas and the headquarters in Plano, Texas (collectively, the "**Office Locations**"), and to pay any costs associated therewith.

4.     After a public auction of the FFE, winning bidders took possession of certain FFE located at the Office Locations. The remaining FFE is currently being stored at an offsite location leased by Gardere Wynne Sewell LLP.

5.     In addition to unsold FFE, which includes dozens of computers and other electronics belonging to the Receivership Estates, the Receiver continues to store over 150 banker's boxes containing business records and other items of the Defendants.

6.     The Receiver promptly cleaned out the Office Locations after the removal of the remaining FFE so that they could be re-leased to new tenants. On October 2, 2015, the Receiver vacated the Office Locations.

7.     During the Third Reporting Period, the Receiver assisted Sameer P. Sethi in ending the lease for the apartment in which Sameer P. Sethi resided. On December 19, 2015, the Receiver supervised and assisted Sameer P. Sethi's move out of that apartment. On that date, the Receiver took possession of certain Receivership Estate assets located at the apartment for

storage by Gardere Wynne Sewell LLP and inventoried the remaining assets that were moved to Sameer P. Sethi's new residence.

**B.     North Dakota Assets**

8.     As identified in the previous Reports, the Receiver's investigation has uncovered assets owned by the Receivership Estates of approximately: (a) twenty-five (25) wells operated by Hess Corp.; (b) two (2) wells permitted, but undrilled by Petro-Hunt, LLC; (c) eight (8) wells operated by G & F Oil; and (d) one (1) well operated by Slawson Exploration Company (collectively, the "**Wells**").

9.     The Receiver continues to explore options for monetizing the Wells.

**C.     Cash on Hand & Receipts and Disbursements**

10.     During the Eighth Reporting Period, the Receiver received the following funds for deposit totaling $1,197.90, as detailed below:

| Deposit Date | Payor | Amount |
| --- | --- | --- |
| 01/13/17 | Slawson Exploration Company, Inc. | $345.58 |
| 01/24/17 | Slawson Exploration Company, Inc. | $234.46 |
| 03/02/17 | Slawson Exploration Company, Inc. | $250.59 |
| 03/20/17 | Slawson Exploration Company, Inc. | $367.27 |
| Total |  | **$1,197.90** |

11.     During the Eighth Reporting Period, the following funds were disbursed from the receivership bank account:

| Deposit Date | Maker | Payee | Amount | Memo |
| --- | --- | --- | --- | --- |
| 01/13/16 | Marcus A. Helt Receiver | DepoTexas, Inc. | $1,109.82 | Sethi Transcript |
| Total |  |  | **$1,109.82** |  |

12. As of the end of the Eighth Quarterly Report, or March 31, 2017, the balance in the receivership bank account totaled $562,198.23.[2]

13. While certain additional expenses have arguably accrued during the Eighth Reporting Period, the Receiver will not make other disbursements to claimants in connection therewith until he can make a determination as to the validity of these expenses and the obligation of the Receivership Estates to pay such expenses.

### D. Claims Held By Receivership Estate

14. During the Second Reporting Period, the Receiver received a substantial amount of bank records and bank statements relating to the prior years of Sethi Petroleum (and related entities). The documents produced in response to subpoenas allowed the Receiver and his professionals to develop an analysis (the "**Tracing Analysis**") of the flow of Receivership Estates' funds prior to the creation of the Receivership. During the Eighth Reporting Period, the Receiver continued evaluating the bank records and bank statements produced by the various banking institutions. Such evaluation enabled the Receiver to continue developing the Tracing Analysis in order to assess sources of income, identify transfers to various insider and non-insider entities, and develop the causes of action against entities potentially in the possession of Receivership Estate assets.

15. Creating the Tracing Analysis has been a monumental task for the Receiver and his professionals because the records of the Receivership Estates were in complete disarray and the business records were incomplete and incomprehensible on the Receiver's appointment. As of the date of this Eighth Report, the Tracing Analysis contains over 12,500 entries catalogued across each of the known Receivership-Estates-related bank accounts.

---

[2] Several credits and debits may have occurred between the final day of the Eighth Reporting Period, March 31, 2016, and the filing of this Eighth Quarterly Report. For example, in April 2017, the Receiver deposited a settlement check from BOA in the total amount of $840,000.00.

16. While the Receiver is still investigating other potential causes of actions through a forensic analysis of these bank statements, his analysis thus far has revealed claims and causes of action available for pursuit by the Receiver to potentially claw back value for valid claimants.

17. As described in further detail in the Second Quarterly Report, the Receiver sent numerous demand letters to various financial institutions (the "**Banks**") demanding the return of over $1.6 million in avoidable transfers under the Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COM. CODE ANN. §§ 24.001 *et seq*. ("**TUFTA**") and other bases of state and federal law. During the Eighth Reporting Period, the Receiver and his professionals continued to engage with the Banks.

### E.     Bank of America Litigation

18. Prior to the Eighth Reporting Period, on March 1, 2016, the Receiver filed his *Receiver's Complaint to Recover Avoidable Transfers and Obtain Other Relief* against Bank of America, N.A. ("**BOA**"), seeking BOA's return of over $1 million in transfers ("**BOA Litigation**"). BOA answered the Receiver's complaint on May 2, 2016, and the Receiver has actively prosecuted that lawsuit during the Eighth Reporting Period. On May 23, 2016, the Court entered its *Order Governing Proceedings*, setting various deadlines in the case. The parties filed their *Joint Report on Rule 26(f) Conference* on June 27, 2016.

19. During the Seventh Reporting Period, the Receiver engaged in the following actions in the BOA Litigation.

- The Receiver evaluated discovery produced by BOA during the Seventh Reporting Period in connection with the BOA Litigation.

- The Receiver prepared for a formal mediation in the BOA Litigation, including preparation of a mediation brief and mediation statement, and evaluation of its legal position and strategy in connection with same. The Receiver also coordinated a formal mediation to be conducted by Eric Madden, a partner at Reid

        Collins Tsai LLP, serving as mediator. The mediation was originally scheduled for October 27, 2016, at Gardere's offices in Dallas, Texas.

20. During the Eighth Reporting Period, the Receiver continued negotiations with BOA and evaluated discovery produced by BOA in connection with preparing his case against BOA. On February 3, 2017, the Receiver participated in mediation with BOA concerning the BOA Litigation, and ultimately reached an agreement with BOA. The Receiver sought and obtained Court approval of the settlement agreement with BOA. After the Eighth Reporting Period, the Receiver obtained and deposited the settlement funds received from BOA in the total amount of $840,000.00.

**F. Sambina Litigation**

21. Prior to the Eighth Reporting Period, on October 28, 2015, the Receiver filed his *Receiver's Complaint to Recover Avoidable Transfers and Obtain Other Relief* (the "**Sambina Litigation**") against Sambina Properties, Ltd., Sambina Brookview Center, Ltd., Sambina Homes, Ltd., and Sambina Trust (collectively, the "**Sambina Defendants**"), seeking the Sambina Defendants' return of over $400,000 in transfers ("**Sambina Litigation**"). Upon information and belief, the Sambina Defendants are owned and/or controlled by Sameer P. Sethi's father, Praveen Sethi.

22. During the Seventh Reporting Period, the Receiver engaged in the following actions in the Sambina Litigation.

- The Receiver prepared for a formal mediation in the Sambina Litigation, including preparation of a mediation brief and mediation statement, and evaluation of its legal position and strategy in connection with same. On October 6, 2016, the Receiver participated in a formal mediation conducted by Eric Madden, a partner at Reid Collins Tsai LLP, serving as mediator at The Tower Club located in Dallas, Texas. After a full day of mediation, it was adjourned to provide the parties an opportunity to conduct further limited discovery into certain facts relative to ongoing settlement discussions. The mediation was scheduled to resume on November 9, 2016, at Gardere's Dallas, Texas offices. In connection therewith, the Receiver prepared written requests for information from the

Sambina defendants and has reviewed documents produced and responses provided by the Sambina defendants. The mediation is scheduled to occur on February 16, 2017.

23. During the Eighth Reporting Period, on February 16, 2017, the Receiver participated in mediation with the Sambina Defendants. Through the mediation process, the Receiver was able to reach a settlement with the Sambina Defendants concerning the Sambina Litigation. The Receiver is in the process of preparing the settlement agreement and related documentation in connection with the settlement reached with the Sambina Defendants and expects to file the requisite papers concerning the settlement in the near future.

**G.     Show Cause Proceeding.**

24. On June 22, 2016, the SEC filed its *Emergency Motion for Show Cause Hearing to Hold Defendant and Others in Contempt, and Brief in Support* [Docket No. 138], pursuant to which the SEC requested a hearing requiring Sameer P. Sethi, Praveen Sethi, and John Weber (a former employee of Sethi Petroleum, LLC) to show cause why they are not in contempt of the Court's orders for conducting a fraudulent scheme after entry of the Receivership Order ("**Show Cause Proceeding**"). The Receiver and his counsel attended the show cause hearing held on August 1, 2016 ("**Show Cause Hearing**"). On August 9, 2016, the Court entered its *Memorandum Opinion and Order* [Docket No. 169], concluding that Sameer Sethi, Praveen Sethi, and John Weber each violated the Court's May 26, 2015 Order by engaging in the offer, issuance, or sale of securities through Cambrian Resources LLC, and requiring those parties to take certain actions in connection therewith.

25. In connection with the Show Cause Proceeding, during the Seventh Reporting Period, the Receiver conferred with the SEC, conferred with counsel to the Receivership Defendants, conferred with counsel to Praveen Sethi, conferred with the mediator in the Sambina

Litigation , and coordinated the receipt and delivery of the return funds from Praveen Sethi to the Cambrian Investors pursuant to the Cambrian Order.

### H.  Estate Assets

26.  The Receiver's continued efforts to identify potential causes of actions against insiders, fiduciaries of the Receivership Estates, and other, non-insider entities extended to entering into settlement discussions with Michael Davis, the former Chief Financial Officer of Sethi Petroleum, LLC. The Receiver and Michael Davis arrived at a settlement compromise, and the Court entered its *Agreed Order Granting Joint Motion to Approve Compromise* [Docket No. 86] regarding the same, which required Mr. Davis to deliver to the Receiver $76,528.22, less a $2,000 credit, not later than Friday, January 8, 2016 at 2:00 p.m. As of the date of this Eighth Quarterly Report, the Receiver has not yet received the funds representing the settlement amount from Mr. Davis.

27.  The Receiver continues to analyze transfers of Receivership Estates funds and the Defendants' books and records to others and the recovery thereof under applicable state or federal law. Some of those claims and causes of action will likely be brought against the principals, affiliates, and "insiders" of Sethi Petroleum and the Receivership Estates. The Receiver intends on prosecuting these causes of action during the next reporting periods. The Receiver may also seek a streamlined procedure by which he can commence litigation related to this action.

28.  During the Eighth Reporting Period, the Receiver continued to coordinate with counsel to American National Bank of Texas ("**ANBTX**") regarding the deposit of approximately $84,565.58 into the registry of the Court. Based on the Receiver's investigation, those funds constitute assets of the Receivership Estates. However, competing parties made claims to those funds. As a result, ANBTX filed its *Intervenor's, American National Bank of*

*Texas, Motion to Allow Interpleader* [Dkt. No 32], seeking authorization to tender the disputed funds into the registry of the Court and dismissal from these proceedings.

29. During the Eighth Reporting Period, ANBTX filed a motion seeking the award of additional fees in connection with its involvement in this case. The Receiver filed a motion objecting to ANBTX's motion on the basis that the sought-after fees were excessive in relation to the benefit ANBTX provided to the Receivership Estates. The Court ruled in the Receiver's favor, and ANBTX was dismissed from these proceedings after depositing the interpleaded funds into the registry of the Court.

I. **Known Creditors**

30. As identified in prior Reports, the Receiver has been informed by multiple operators of wells in which Sethi Petroleum owns an interest that Sethi Petroleum has not paid its Joint Interest Billings. The Receiver has requested from these operators additional detail in order to perform an independent verification of the amounts alleged to be owed by these operators. Additionally, information from other potential operators has been requested and may inform the Receiver of additional amounts due operators.

31. The Receiver has compiled from records located at the headquarters and electronic files of employees a list of known investors in Sethi Petroleum (or one of its investment vehicles). The Receiver has not independently verified that each person listed in Sethi Petroleum's record is, in fact, an investor or the amount invested. However, according to the records located by the Receiver, there are approximately 275 investors that have invested approximately $13.5 million with Sethi Petroleum (and its related investment vehicles). The Receiver identified the investors in the First Report and the Receiver makes no representations or acknowledgements as to the validity of the information contained in the First Report and reserves all rights to amend, modify, and contest same.

32. At the beginning of the case, Sethi Petroleum was involved in eight (8) different lawsuits as defendant, plaintiff, or both. The Receiver filed "suggestions of receivership" in each of the cases thereby staying the litigation in accordance with the Receivership Order. The Receiver has conferred with most of the parties (or their respective counsel) to the litigation in an effort to gather sufficient information to enable the Receiver to make an informed decision regarding the merits of the litigation. Those discussions are still ongoing.

**J.    Investor Communications / Administrative Matters**

33. In addition to the website established by the Receiver to keep investors up to date of the status of the Receivership, the Receiver has continued to field and return phone calls from concerned investors on the dedicated phone number established during the First Reporting Period. The Receiver has communicated with numerous investors – some on multiple occasions – regarding the case during the Eighth Reporting Period.

34. During the Fourth Reporting Period, the Receiver engaged tax experts to assist in the preparation of various tax-related matters. Because Sethi Petroleum's books and records were poorly maintained and incomplete as of the Receiver's appointment, the Receiver's tax experts experienced difficulty preparing the various tax filings at the outset of their engagement. Accordingly, the Receiver filed extensions on certain tax filings to provide its tax experts additional time to compile and evaluate the Receivership Estate records necessary to complete those filings. The Receiver and his tax experts continued working on the tax filings during the Eighth Reporting Period. Previously, the Receiver and his tax experts submitted federal and state taxes in connection with Sethi Petroleum's wage and tax statements for the year ended 2015.

35. During the Seventh Reporting Period, the Receiver discovered that Rob Morgan, a former principal of Sethi Financial Group, appeared in an interview on television and the

Internet on behalf of Sethi Financial Group. The Receiver drafted and transmitted to Mr. Morgan a cease and desist letter demanding his immediate cessation from taking actions on behalf of or related to the Defendants. The Receiver's actions in connection with Mr. Morgan are ongoing.

### K.     Creditor Claims Proceedings

36.     The Receiver has not yet requested the Court to approve creditor-claim procedures. The Receiver will request approval of creditor-claim procedures only after the Receiver has confirmed that there will be assets available for distribution.

### L.     Receiver's Recommendations

37.     While the Receiver has seized control of readily identifiable assets and operations and begun his diligence of identifying additional assets and liabilities, it is too soon to make a final recommendation as to when this Receivership case will be resolved. The remaining tasks the Receiver expects to complete include (a) liquidating and monetizing the Wells; (b) prosecuting and/or finalizing the litigation identified in subsection I above, and (c) conducting a claim analysis and initiating creditor claims proceedings for ultimate distribution to creditors. Accordingly, the Receiver recommends that the receivership continue to allow the Receiver additional time to locate assets and determine how to resolve the Receivership Estates.

Dated: May 1, 2017                                    Respectfully submitted,

*/s/ Matthew J. Pyeatt*
Thomas C. Scannell (TX 24070559)
Matthew J. Pyeatt (TX 24086609)
**GARDERE WYNNE SEWELL LLP**
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
tscannell@gardere.com
mpyeatt@gardere.com

**COUNSEL FOR THE**
**RECEIVER, MARCUS A. HELT**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 1, 2017, a true and correct copy of this document was served *via* the Court's PACER system.

*/s/ Matthew J. Pyeatt*
Matthew J. Pyeatt

**RECEIVER'S EIGHTH QUARTERLY REPORT**                                    **PAGE 13**
Gardere01 - 10192777