# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION § § § § § § § § §| |
| | Civil Action No. 4:15-CV-00338 |
| v. | Judge Mazzant |
| SETHI PETROLEUM, LLC, SAMEER P. SETHI | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Security and Exchange Commission's Motion to Enter Judgment (Dkt. #252) and Sameer P. Sethi's Motion to Amend Findings (Dkt. #258). After reviewing the relevant pleadings and motions, the Court finds the motion for judgment should be granted and the motion to amend findings should be denied.

## BACKGROUND

As early as January 2014, Defendant Sameer Sethi ("Sameer") and his company, Sethi Petroleum, LLC ("Sethi Petroleum"), began offering to investors positions in the Sethi-North Dakota Drilling Fund-LVII Joint Venture ("NDDF"). The offering proposed income from two sources: oil-and-gas revenues, and tax benefits for oil-and-gas exploration and production activities.

On May 14, 2015, the Securities and Exchange Commission ("SEC") brought a civil enforcement action under Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder. The SEC alleged that Defendants carried on a fraudulent scheme and made materially false and misleading statements to potential investors to offer and sell securities in the NDDF. On May 26, 2015, the Court entered the Agreed Preliminary Injunction, Asset Freeze, and Other Relief ("Preliminary Injunction") (Dkt. #23).

Shortly thereafter, Sameer began selling securities with a different company, Cambrian Resources LLC ("Cambrian"). On August 1, 2016, the Court held a show cause hearing regarding the alleged contempt by Sameer and others. On August 9, 2016, the Court entered an order finding Sameer, his father Praveen Sethi ("Praveen"), and John Weber ("Weber") in contempt for violating the terms of the Preliminary Injunction by directly or indirectly engaging in the offer, issuance, or sale of securities through Cambrian (Dkt. #169).

On September 14, 2016, the SEC moved for summary judgment, claiming that Defendants made material misrepresentations about Defendants' history and experience; false claims of partnerships with major oil companies; false claims about NDDF's interest in wells; false and unfounded representations about NDDF returns; and Sameer's personal instructions to "boiler room" sales staff to mislead potential investors. Sameer argued that his statements were not fraudulent because they were forward-looking and because not enough time had passed for his plans to materialize. Sameer also argued that NDDF's relationship with Slawson Exploration Co. was a relationship with a major oil and gas company. The Court denied summary judgment on four theories asserted by the SEC, but granted summary judgment based on Sameer's representations that Sethi Petroleum had partnerships with major oil companies (Dkt. #238 at p. 20).

On March 1, 2017, the SEC filed a motion for judgment (Dkt. #252). On March 23, 2017, Sameer filed a response (Dkt. #256; Dkt. #257).[1] On March 30, 2017, the SEC filed a reply (Dkt. #259). On April 10, 2017, Sameer filed a surreply (Dkt. #262).

---

[1] Sameer filed a Combined Motion to Amend Findings and Response to Plaintiff's Motion to Enter Judgment (Dkt. #256), which was not designated as a pending motion due to the local rule prohibiting multiple motions in a single filing. E.D. Tex. Civ. R. CV-7(a). On March 27, 2017, Sameer filed a Motion to Amend Findings (Dkt. #258), which contained identical arguments to the first part of his previous filing and was designated as a pending motion.

On March 27, 2017, Sameer filed a Motion to Amend Findings (Dkt. #258). On April 10, 2017, the SEC filed a response (Dkt. #263). On April 21, 2017, Sameer filed a reply (Dkt. #264).

## ANALYSIS

### I. Motion to Amend Findings (Dkt. #258)

Sameer urges the Court to amend its findings according to Federal Rule of Civil Procedure 52. Rule 52 permits a court to amend, or make additional findings, upon a party's motion. Fed. R. Civ. P. 52(b). "The purpose of Rule 52 is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (citation omitted). However, a motion to amend should not be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits. *Id.* The court is only required to amend its findings of fact based on evidence contained in the record. *Id.* To do otherwise would defeat the compelling interest in the finality of litigation. *Id.*

Sameer argues that the Court should amend its finding on Sameer's misrepresentation regarding partnerships with major operators. Sameer argues that the Court incorrectly characterized the size of its well operators because the operators cited by the Court in its opinion granting summary judgment are publicly traded or have market capitalization of more than $7 billion. Because this was the only basis for which the Court granted summary judgment, Sameer argues that summary judgment was improper.

The SEC argues that Sameer waived this argument when his only response to summary judgment was that statements about direct partnerships with major oil and gas operators were future-looking statements.

The record before the Court at the summary judgment stage does not support amended findings. Sameer's response to summary judgment first claimed that his statements were not false because they were future-looking statements (Dkt. #211 at p. 12). Sameer then argued that Slawson Exploratino Co. "is a major oil and gas company that [sic] prominently in the area where the wells were located" (Dkt. #211 at p. 13). Sameer's only support was a URL leading to a Forbes.com profile of the Slawson family. Sameer did not argue that any of the other operators were major oil and gas companies. Sameer did not provide evidence of the size or influence of the other operators, and he did not request the Court take judicial notice of the sizes of oil companies.

This is the first time Sameer has attempted to provide support for the size of each operator. The facts were available to Sameer when he responded to summary judgment; yet, Sameer did not provide such support in either his response or surreply to summary judgment. Therefore, Sameer may not now assert those facts to relitigate summary judgment. Sameer's motion is denied.

Further, Sameer's representations led a reasonable investor who was not well-versed in oil and gas to believe that Sethi Petroleum's partnerships were with much larger companies. Sethi Petroleum represented on its webpage that it had current relationships with Exxon and Hess Corporation. The cold call script stated that Sethi Petroleum was "partnered directly with a couple of HUGE, PUBLICLY trades companies like Conoco Phillips, Continental, GMXR just to name a few. We are working DIRECTLY with these major companies." Sethi Petroleum implied that it had a current relationship with ConocoPhillips by using the phrase "just to name a few" and the present tense verb "are." Further, the next sentence confirms this implication by

claiming that Sethi Petroleum was working with "these" companies, not similar companies. For all of these reasons, Sameer's motion to reconsider is denied.

## II. Motion for Judgment (Dkt. #252)

In his response to the Motion to Enter Judgment, Sameer argues reliance on counsel in two regards. First, Sameer argues that the Court should amend its findings on intent necessary to find securities fraud. Sameer argues that he made statements based on advice of counsel, and therefore he lacked the intent to defraud investors. Sameer also argues his reliance on counsel in the context of defeating a factor for permanent injunction. The SEC argues that Sameer waived this argument by failing to bring it up until the surreply to the motion for summary judgment.

To the extent that Sameer asks the Court to amend its summary judgment findings as to securities fraud, the Court agrees with the SEC. Courts do not consider issues raised for the first time in a reply brief. *Morin v. Moore*, 309 F.3d 316, 328 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995)). Therefore, Sameer waived his argument regarding his underlying violation of the securities laws. A motion for judgment is not the appropriate time to introduce evidence relating to liability.

### A. Permanent Injunction

Section 21(d) of the Exchange Act provides for injunctive relief when the evidence establishes a "reasonable likelihood" that a Defendant will engage in future violations of the securities laws. *See* 15 U.S.C. §§ 77t(b), 78u(d)(1); *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692 (9th Cir. 1978). "[T]he Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances,

betoken a 'reasonable likelihood' of future transgressions." *Zale Corp.*, 650 F.2d at 720; *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1973).

Courts consider a number of factors when imposing permanent injunctions, including: (1) egregiousness of the defendant's conduct; (2) isolated or recurrent nature of the violation; (3) degree of scienter; (4) sincerity of the defendant's recognition of his transgression; and (5) likelihood of the defendant's job providing opportunities for future violations. *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009); *Blatt*, 583 F.2d at 1334–35.

The SEC argues that the Court should permanently enjoin Sameer because his violations were multiple, continued, egregious, and undertaken with scienter (Dkt. #252 at p. 3). Sameer argues that a permanent injunction is inappropriate because he has continuously engaged with lawyers to abide by securities laws and because he has shown sincere efforts to profit from oil and gas exploration (Dkt. #256 at p. 8).

*1. Egregiousness of Conduct*

Sameer's conduct was egregious. The SEC alleged that Sameer violated the Preliminary Injunction just days after the Court entered it. After holding a show cause hearing, the Court found by clear and convincing evidence that Sameer continued to sell securities after the Court entered the Preliminary Injunction. Sameer cites a statement from that hearing where the Court stated: "the big question for the SEC is, is this a security" (Dkt. #217 at 373:7–8). Sameer characterizes this statement to mean that the SEC had more to prove than he did and thus Sameer's actions were not egregious. Sameer argues that he did his best to walk the fine line between a partnership and a security.

The SEC argues that Sameer's violations were egregious because he deceived investors with repeated lies in order to raise over $4 million, and Sameer disregarded the Court's

preliminary injunction. The SEC further argues that Sameer immediately comingled investors' funds, that he never consulted investors before suing for rescission of their only mineral asset, and that he employed dozens of workers to spread his lies across the country. The Court finds Sameer's conduct was egregious because of his repeated lies and disregard of the Court's order.

The Court declines to assume, without evidence, that Sameer committed egregious violations because he employed dozens of people related to the oil and gas industry. The SEC has not come forth with any evidence that Sameer employed landmen, geologists, or an IT department with the intent to further his fraudulent scheme. Rather, the SEC has proved that Sameer unreasonably relied on one person, Michael Davis ("Davis"), who claimed to be an attorney and accountant, but was not.

Nevertheless, the Court finds Sameer's acts in evading the Court's order were egregious. The SEC proved that the day after the Court entered the Preliminary Injunction, Sameer engaged Weber for the explicit purpose of creating Cambrian to avoid the Court's order. Sameer's argument that he created Cambrian in an effort to comply with securities laws is not convincing. Multiple witnesses testified at the contempt hearing that they knew Sameer could not be associated with Cambrian because of this lawsuit. If Sameer honestly believed that Cambrian was not engaged in the sale of securities, then he would have no problem being a full participant. However, Sameer demonstrated his knowledge of misconduct by concealing his actions with papers that claimed Weber was in charge of Cambrian. Evidence showed that Weber was the owner of Cambrian on paper, but that Sameer was truly in charge. The Court finds such side-stepping actions to be egregious conduct.

*2. Isolated or Recurrent Nature of the Violation*

Sameer's actions were recurrent. Sameer instructed his salespeople each morning. At his direction, Sameer's callers contacted approximately 2,000 potential investors per day, eventually capturing more than 90 investors from 28 different states. Then, Sameer created a new entity to continue selling securities after Sethi Petroleum was enjoined. Quite simply, this was not a one-time mistake by Sameer.

*3. Degree of Scienter*

Sameer argues that scienter is negated by his continued reliance on counsel. Sameer argues that if his intent was to defraud investors, he would not have spent substantial sums of money to retain counsel. Sameer cites the SEC's calculation of Sethi Petroleum's legal expenses as evidence of this expense. Sameer also argues that he hired a Harvard law graduate to help craft the NDDF offering documents. The SEC argues that it was Weber, not Sameer, who sought legal advice, and that the advice sought was how to "avoid papering Cambrian like a security."

Reliance on counsel is not a formal defense, but rather "[i]t is simply a means of demonstrating good faith and represents possible evidence of an absence of any intent to defraud." *SEC v. Snyder*, 292 F. App'x 391, 406 (5th Cir. 2008) (quoting *United States v. Peterson*, 101 F.3d 375, 381 (5th Cir. 1996)). In *Peterson*, the Fifth Circuit approved a jury instruction that described the defense as follows:

> To decide whether such reliance was in good faith, you may consider whether the Defendant sought the advice of a competent attorney concerning the material fact allegedly omitted or misrepresented, whether the Defendant gave his attorney all the relevant facts known to him at the time, whether the Defendant received an opinion from his attorney, whether the Defendant believed the opinion was given in good faith and whether the defendant reasonably followed the opinion.

*Peterson*, 101 F.3d at 381 n.5. Under this analysis, a party may not avoid liability under the securities laws by simply retaining outside counsel to prepare required documents. Nevertheless,

the Government constantly bears the burden to prove intent to deceive. *Snyder*, 292 F. App'x at 406.

The SEC proved that Sameer acted with scienter. As stated by the Court in its Memorandum Opinion and Order (Dkt. #238), Sameer engaged in a scheme intended to deceive others and to induce their investment. Sameer trained his callers on how to obtain investors. This began with a cold call to potential investors in which Sethi Petroleum represented that it is "partnered directly with a couple of HUGE, PUBLICLY traded companies like Conoco Philips, Continental, GMXR just to name a few." If the investor expressed interest, the salesperson qualified the investor as an "accredited investor." The determination of an "accredited investor" is unrelated to the investor's experience in oil and gas. Rather, an "accredited investor" simply had a certain amount of money. Once the investor expressed interest and was qualified as "accredited," the salesperson sent offering documents including the Private Placement Memorandum and Executive Summary.

The Court does not find Sameer's argument of reliance on counsel convincing. The evidence dispels the only arguments Sameer makes regarding reliance on counsel in this case. Contrary to Sameer's contentions, he did not hire a Harvard law graduate. Rather, Weber hired a Harvard law graduate to help him draft Cambrian's offering documents. However, Sameer ultimately controlled Weber. Weber said that he acted at the behest of Sameer's lawyers. One of Sameer's lawyers was Davis. Davis represented that he was a licensed attorney and that he had a Master's of Business Administration degree from the University of Texas. Weber later became General Counsel for Sethi Petroleum for less than a month. In this short time, Weber discovered that Davis did not have any of the degrees that he represented he had. This shows that Sameer did not reasonably rely on a competent attorney. The fact that Davis's fraudulent representations

could easily be uncovered shows that Sameer was not diligent in determining Davis's credentials. Further, because Davis effectively controlled Weber, the hiring of a Harvard law graduate is irrelevant because Weber and the Harvard law graduate acted at the behest of a fraud.

Further, Sameer's evasive acts to skirt the Court's Preliminary Injunction show that Sameer was not given, or did not follow, any reasonable legal opinion. People inside the Cambrian organization repeatedly said that Sameer could not participate because of the Preliminary Injunction. Yet, Sameer and Weber constantly maintained that Cambrian was not selling securities. These are inconsistent positions. Sameer's role was so large that Cambrian employees saw Weber as merely a placeholder to keep the illusion that Sameer was not involved. Even assuming that Sameer reasonably believed the person giving the advice was a competent attorney, the Court finds that a person could not reasonably follow such advice. Therefore, Sameer's arguments for reliance on counsel support, rather than negate, scienter.

*4. Sincerity of Defendant's Recognition of his Transgression*

Sameer has not been sincere in recognizing his transgression. The Court does not find Sameer's willingness to contest the SEC's accusations as a lack of remorse. However, Sameer's willingness to violate Court orders resulting from the NDDF venture is telling. *SEC v. Koenig*, 469 F.2d 198, 202 (2d Cir. 1972). The day after the Court entered the Preliminary Injunction, Sameer began his scheme to violate the Court's order by creating Cambrian. While Sameer now claims that he worked hard to keep Cambrian out of the securities realm, he had the foresight at the time to distance himself from Cambrian. Sameer placed Weber as the owner of Cambrian, while Sameer performed its essential functions and even managed Weber. Further, it was well-known that Sameer could not be on Cambrian papers because of the Preliminary Injunction.

These acts show that Sameer did not recognize his transgressions with NDDF and had a disregard for the consequences of his actions.

### 5. Likelihood of Defendant's Job Providing Opportunities for Future Violations

Finally, Defendant's job provides numerous opportunities for future violations. The SEC argues that Sameer has shown a repeated disregard for securities laws and authority of the Court. Sameer argues that if he is allowed to continue in the oil and gas industry, he will continue to abide by securities laws. In another portion of Sameer's response, he argues that this litigation has caused major damage to his reputation and therefore investors or partners will not be likely to do business with Sameer.

Sameer's arguments are unavailing. First, as the Court has noted in this opinion and its opinion following the contempt hearing, Sameer's engagement with lawyers has been for nefarious purposes to skirt the Court's orders. It is more likely that if Sameer continues to engage attorneys, he will continue to search for ways around the Court's order at the expense of innocent investors. Further, the SEC is not seeking to enjoin Sameer's involvement in the oil and gas industry, but rather to enjoin Sameer from soliciting investors to purchase or sell securities. Finally, the fact that Sameer has already been ostracized is no argument that he should not be enjoined. The question is whether Sameer's job provides opportunities, not whether those opportunities are guaranteed. *Gann*, 565 F.3d at 940. Even though Sameer's opportunities may be much fewer because of the public nature of this lawsuit, he nevertheless has opportunities. Therefore, this factor also weighs toward an injunction.

Based on the foregoing analysis, the Court finds that Sameer should be permanently enjoined from directly or indirectly soliciting investors to purchase or sell securities, provided

that such injunction does not prevent Sameer from purchasing securities listed on a national securities exchange for his own personal accounts.

### B. Disgorgement

"The district court has broad discretion not only in determining whether to order disgorgement but also in calculating the amount to be disgorged." *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). The party seeking disgorgement must distinguish between what has been legally and illegally obtained. *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007). In actions brought by the SEC involving a securities violation, "disgorgement need only be a reasonable approximation of profits causally connected to the violation." *Allstate Ins. Co.*, 501 F.3d at 413 (quoting *SEC v. First City Fin. Corp.*, 890 F.3d 1215, 1231 (D.C. Cir. 1989)). In the securities context, the proper starting point for disgorgement is the total proceeds received from the sale of the securities. *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972). The SEC bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation. *First City Fin. Corp.*, 890 F.2d at 1232; *SEC v. Rockwall Energy of Tex., LLC*, No. H-09-4080, 2012 WL 360191, at *3 (S.D. Tex. Feb. 1, 2012). Once the SEC meets its burden, the burden shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *First City*, 890 F.2d at 1232.

In attempting to mitigate liability, "securities law violators may not offset their liability with business expenses of running the very business that they created to defraud investors." *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1114 (9th Cir. 2006). However, in a partially legitimate company, business expenses that do not further a fraudulent scheme can reduce disgorgement awards. *Id.* at 1114–15.

The SEC argues for a disgorgement amount of $4,028,264.81 because Sameer's misrepresentations enabled him to raise $4,028,264.81 via the NDDF venture. The SEC does not provide additional evidence of the alleged ill-gotten gains. Rather, it relies on the Court's previous order granting summary judgment and the fact that Sameer has not met his burden to refute the SEC's calculation.

Sameer argues that the NDDF spent $3.4 million on legitimate business expenses, including oil and gas lease projects, marketing, and other human capital. While he acknowledges that this was over budget for NDDF's projected expenditures, Sameer argues that it was not unreasonably so. To support his arguments, Sameer provided excerpts of the SEC's summary of Sethi Petroleum's Bank of America accounts and a table comparing NDDF expected expenditures to Sethi Petroleum's actual expenditures (Dkt. #257 at pp. 6–8).

The essence of the NDDF was to encourage investors to invest under false pretenses that Sethi Petroleum had partnerships with major oil operators. By misleading investors, Defendants were able to raise much more money than they would have raised had they told the truth. While Sameer may now argue that he used some of the raised money for legitimate ends, this argument is inapposite. The standard for disgorgement does not look to how the defendant spent the money, but rather how it was gained. The Fifth Circuit has recognized that the overwhelming weight of authority does not allow securities laws violators to offset their liability with business expenses. *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746 (5th Cir. 2004) (citing cases); *see also SEC v. Brown*, 658 F.3d 858, 861 (3d Cir. 2011); *SEC v. Kahlon*, No. 4:12-cv-517, 2016 WL 5661642, at *4 (E.D. Tex. Sept. 30, 2016). Courts have required tippers in insider trading cases to disgorge profits gained by individuals who received and traded on that information, even though the tipper never received any profits. *SEC v. Warde*, 151 F.3d 42, 49

13

(2d Cir. 1998); *SEC v. Clarke*, 915 F.2d 439, 454 (9th Cir. 1990). For these reasons, the Supreme Court recently held that disgorgement is actually a penalty. *Kokesh v. SEC*, 137 S. Ct. 1535, 1644 (2017).

The Court previously found that the investors targeted by Defendants did not have knowledge of the oil and gas industry. Based on this, the Court found that Defendants' representations regarding partnerships with major oil and gas companies amounted to fraudulent statements. Notwithstanding Sameer's present argument that Sethi Petroleum did have partnerships with major companies that were simply not household names, the Court has found that the total mix of information constitutes fraud. Sameer has not offered any explanation about how NDDF investors would have invested had they not received representations about major partnerships with companies like ConocoPhillips. Because these representations were material to investors and because there is no proffered demarcation between the amount that would have been invested without these representations, the Court finds that the total amount raised is a reasonable approximation of illegal profits connected to the violation.

While the Court does not accept Sameer's argument for an offset based on business expenses, the Court does agree that Sameer's liability should be offset for any amount repaid to investors. The Receiver has not yet completed his distribution to investors. Until the Receiver does so, the Court cannot calculate a final disgorgement figure. The Receiver is therefore ordered to include in his final report for the receivership estate an amount distributed to investors. At that time, Sameer's obligation to pay $4,028,264.81, less any amounts returned to investors, will accrue.

C. Prejudgment Interest

The SEC also argues for prejudgment interest on Sameer's disgorgement. Besides arguing that disgorgement is premature, Sameer does not make any argument regarding prejudgment interest.

A court may award prejudgment interest in order to prevent a defendant from profiting from his securities violations by what amounts to an interest free loan procured by illegal activity. *SEC v. Gunn*, No. 3:08-cv-1013-G, 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010) (citing *SEC v. Sargent*, 329 F.3d 34, 40–41 (1st Cir. 2003)). A court may order disgorgement of all ill-gotten gain, plus any interest the defendant profited from his wrongdoing. *Blatt*, 583 F.2d at 1335.

The SEC requests prejudgment interest beginning March 9, 2015, the date Sameer raised his final investment with NDDF. The SEC provided a table of its interest calculation in which it used the full Internal Revenue Service ("IRS") tax underpayment rate, compounded quarterly (Dkt. #252, Exhibit A). The IRS underpayment rate "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud. Accordingly, courts have approved the use of the IRS underpayment rate in connection with disgorgement." *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996). The SEC's calculation is reasonable. *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1099–1100 (9th Cir. 2010) (holding that court was within its discretion to award prejudgment interest from the date securities were sold).

Further, the SEC's basis of $4,028,264.81 is reasonable. The fact that the Receiver may return some (or even most) of the illegally obtained funds does not alter the fact that the entire amount was at Sameer's disposal before the SEC filed this motion. *See SEC v. AmeriFirst*

*Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 1959843, at *5 (N.D. Tex. May 5, 2008). Similarly, delays of litigation do not mitigate Sameer's liability for prejudgment interest. *First Jersey Secs.*, 101 F.3d at 1477. Sameer is liable to pay prejudgment interest on the entire amount of his ill-gotten gains for the entire period from the time of his unlawful gains until the entry of judgment in this case. *SEC v. Razmilovic*, 822 F. Supp. 2d 234, 278 (E.D.N.Y. 2011).

### D. Civil Penalty

Civil penalties are designed to punish the individual violator and to deter future violations of the securities laws. *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998). While the statutory tier determines the range of maximum penalties for each violation, the amount imposed is left to the Court's discretion. *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005).

> In determining the appropriate amount for civil penalties, courts consider:
>
> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Capital Sols. Monthly Income Fund, LP*, 28 F. Supp. 3d 887, 901 (D. Minn. 2014).

The SEC argues that the foregoing analysis has shown that all but the final factor weigh heavily in favor of a substantial civil penalty. The SEC also argues that Sameer's financial condition is not a basis to forego or reduce civil penalties, especially based on his co-dependence with his father. The SEC then calculated the range of penalties for each tier, based on a scheme of five violations, one for each statement cited by the Court in its order on summary judgment.

Sameer argues that civil penalties are not appropriate based on his arguments regarding egregiousness, truthfulness of the statements, and reliance on counsel. Sameer further argues that he had substantial legitimate business expenses that negate any scienter. Finally, Sameer argues

16

that his financial condition makes it impossible for Sameer to pay an order of disgorgement, let alone a civil penalty.

The Court finds that Sameer should be assessed a civil penalty commiserate with the maximum penalty for a single, third-tier violation. Sameer's violations occurred between March 5, 2013, and November 3, 2015. Therefore, the relevant adjustment of civil monetary penalties is the adjustment issued in 2013. 17 C.F.R. § 201.1005. Under the 2013 adjustment, a maximum third-tier penalty for a natural person is $160,000.

The Court views this as a mild penalty under the circumstances and an appropriate guidepost given the lack of argument as to amount of penalty. The Court does not agree with the SEC's guidepost of $800,000 as the "low max" civil penalty for Sameer's third-tier violations. While the SEC does come to this number by conservatively figuring only five violations, a lower penalty is warranted because Sameer has a significantly diminished financial capacity, and the Court has already assessed large amounts of disgorgement and prejudgment interest. The Court finds the penalty for a single violation is a reasonable guidepost considering Sameer's numerous violations. Sameer successfully induced ninety people to invest in NDDF, and solicited countless others. Therefore, Sameer should be assessed a civil penalty of $160,000.

## CONCLUSION

It is therefore **ORDERED** that the Security and Exchange Commission's Motion to Enter Judgment (Dkt. #252) is hereby **GRANTED**.

It is further **ORDERED** that Defendant Sameer P. Sethi's Motion to Amend Findings (Dkt. #258) is hereby **DENIED**.

It is further **ORDERED** Defendant Sameer P. Sethi is **PERMANENTLY RESTRAINED AND ENJOINED** from violation of Sections 17(a) of the Securities Act of

1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

It is further **ORDERED** that Defendant Sameer P. Sethi, his agents, servants, employees, attorneys, and all persons in active concert or participation with him, are **PERMANENTLY RESTRAINED AND ENJOINED** from directly or indirectly soliciting investors to purchase or sell securities, provided that such injunction does not prevent Sameer P. Sethi from purchasing securities listed on a national securities exchange for his own personal accounts.

It is further **ORDERED** that the Receiver include in his final report for the receivership estate an amount distributed to investors. At that time, Sameer's obligation to pay $4,028,264.81, less any amounts returned to investors, will accrue.

It is further **ORDERED** that Sameer P. Sethi pay a civil penalty of $160,000.

It is further **ORDERED** that Sameer P. Sethi pay prejudgment interest from March 9, 2015, until the date of final judgment.

It is further **ORDERED** that the SEC submit a final judgment, including a final calculation of prejudgment interest, within five (5) days of this order.

**SIGNED this 7th day of August, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE