# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION | § | |
| | § | Civil Action No. 4:15-CV-00338 |
| v. | § | Judge Mazzant |
| | § | |
| SETHI PETROLEUM LLC and SAMEER | § | |
| P. SETHI | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is: (1) Motion to Intervene, Request for Leave to File Action Against Receiver, and Request for Preliminary Injunction for Return of Seized Property (Dkt. #296); (2) Trinity Escrow, LLC's Emergency Request for Preliminary Injunction for Return of Seized Property (Dkt. #314); (3) Kingsbridge Capital, LLC's Emergency Motion to Intervene (Dkt. #316); (4) Kingsbridge Capital, LLC's Emergency Motion for Preliminary Injunction for Return of Possession of Seized Property (Dkt. #317); (5) Request for Concurrent Hearing on Emergency Motions by Julissa Martinez, Trinity Escrow, LLC, and Kingsbridge Capital, LLC (Dkt. #318); (6) Trinity Escrow, LLC's Emergency Motion to Intervene (Dkt. #319); (7) Emergency Pro Se Motion to Intervene per Federal Rule of Civil Procedure 24(a)(2) (Dkt. #324); (8) Emergency Pro Se Motion to Intervene per Federal Rule of Civil Procedure 24(a)(2) (Dkt. #335); (9) Emergency Pro Se Motion to Intervene per Federal Rule of Civil Procedure 24(a)(2) (Dkt. #336); (10) Motion for Hearing per Federal Rule of Civil Procedure 7(b)(1) (Dkt. #337); (11) Emergency Motion for Hearing per Federal Rule of Civil Procedure 7(b)(1) (Dkt. #338); and (12) Emergency Motion for Hearing per Federal Rule of Civil Procedure 7(b)(1) (Dkt. #339). Having considered the motions and the relevant pleadings, the Court finds that the Motions are **GRANTED** in part and **DENIED** in part.

Before the facts concerning the present motions can be discussed, it does well to briefly summarize the prior proceedings before the Court that color the present matter. On May 14, 2015, the Securities and Exchange Commission ("the Commission") filed suit against Sethi Petroleum, LLC and Sameer Sethi (Dkt. #1). The Commission alleged that Sameer Sethi and Sethi Petroleum were "engaged in an oil and gas securities fraud" (Dkt. #1). The Commission also filed its Emergency *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, Asset Freeze, Appointment of a Receiver, and Other Emergency and Ancillary Relief (Dkt. #4) on May 14, 2015. The Court granted the Commission's Motion and "appointed Marcus A. Helt as receiver over Sameer Sethi and his many entities" on May 14, 2015 (Dkt. #12). The Receiver was authorized to have complete control, possession, and custody of the Receivership Estate and any assets traceable to the Receivership Estate (Dkt. #12). On July 13, 2015, the Court entered its Order Granting the Receiver's Motion to Confirm Receivership Assets/Entities (Dkt. #56). Among those assets and entities confirmed was Sethi Financial Group, Inc. (Dkt. #56).

Sameer Sethi, however, was not finished. Following the Court's Preliminary Injunction Order, "Sameer Sethi, [] Praveen Sethi, and John Weber established Cambrian Resources for the purpose of evading the injunction" (Dkt. #169, p. 14). The Court found all three men in contempt of court (Dkt. #169) "and ultimately ordered Praveen Sethi imprisoned until he returned Cambrian's investors' money" (Dkt. #301) (citing Dkt. #184). Following these events, the Commission filed a Motion for Summary Judgment (Dkt. #195). On January 17, 2017, the Court granted summary judgment against Sameer Sethi and found, among other things, that Sethi was liable for violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Section 20(a) of the Exchange Act, and Section 17(a) of the Securities Act (Dkt. #238). On August 9, 2017, the

Court entered final judgement against Sameer Sethi (Dkt. #266; Dkt. #267). Sethi was accordingly ordered to pay over "[$4,000,000] in disgorgement of ill-gotten gains, a civil penalty of $160,000, and more than $348,000 in prejudgment interest" (Dkt. #267). To this day, "[t]hose amounts remain unpaid" (Dkt. #301). Having discussed the background proceedings which color the present matter, the Court now turns to the more immediate facts.

Approximately three years ago, Julissa Martinez ("Martinez"), Sameer Sethi's wife, "opened her own office to facilitate her own Enterprises" (Dkt. #296). According to Martinez, the office space lease is in her name or Kingsbridge Capital, LLC's name[1] and all payments for her office are directed to her personal bank account (Dkt. #296). The office space, Martinez continues, has been used for "organizational purposes, to receive and provide makeup services to her private clients and to teach film and special-effects makeup" (Dkt. #296). Prior to using the office space for makeup, Martinez utilized the space for her own skin care company (Dkt. #296).

Recently, Martinez decided to "diversify further and begin her own partnership recruitment services company from her already existing office location" (Dkt. #296). Under her new business plan, Martinez recruits partners into an LLC or drilling club (Dkt. #296). These partners pool their capital together and "independently purchase drilling rights and participate in oil well developments of their own choosing" (Dkt. #296). This business was added to Martinez' portfolio in 2018 and was named "Elkwood Capital" (Dkt. #296). To date, Martinez only has one partner: a personal friend by the name of Van Dai (Dkt. #296). Van Dai contributed $100,000 to the business (Dkt. #296).[2] Additionally, Martinez received a loan from Shahnaz Sethi—purportedly

---

[1] Kingsbridge Capital is a company owned and managed by Julissa Martinez (Dkt. #316).
[2] The parties discussed the use of Van Dai's investment at the Court's hearing. According to testimony at that hearing, the $100,000 was originally deposited in Trinity Escrow. Following that deposit, $25,000 were transferred to Elkwood Capital. From Elkwood Capital, approximately $11,000 were distributed amongst Praveen Sethi, Shahnaz Sethi, and Julissa Martinez. A "loan" of approximately $10,000 was then taken from Trinity Escrow. From that loan, it appears that another sum, approximately $2,500, was paid by cashier check to a Ray Sharp—a creditor of Sameer Sethi.

totaling $100,000 (Dkt. #336)—and what has been disputedly characterized as a loan from Praveen

Sethi totaling $7,300.[3]  Those funds were originally deposited in Trinity Escrow, LLC, another

company owned and managed by Julissa Martinez with its bank account located at LegacyTexas

Bank (Dkt. #296; Dkt. #314).

After discussing her business with her husband, Sameer Sethi, Martinez decided that she

should "properly incorporate this new endeavor . . . ." (Dkt. #296).  Sameer Sethi consequently

"offered to give [Martinez] anyone of his many left-over companies that were no longer being

used" (Dkt. #296).  According to Martinez, Sameer Sethi's offer only extended to those companies

which "he believed were not a part of the receivership estate" (Dkt. #296).  On October 24, 2018,

Praveen Sethi, Sameer Sethi's father, "changed the name of Sethi Financial Group, Inc.—an entity

that the Court had placed within the sole custody and control of the Receiver—to Elkwood Capital,

Inc." through a Certificate of Amendment with the Texas Secretary of State (Dkt. #299; Dkt. #301)

(citing Declaration of Keith Hunter, ¶3).  The Texas Secretary of State then approved the

reinstatement and formal name change (Dkt. #296).  Martinez claims that she continued to conduct

her business as usual and finance her office space personally following the filing (Dkt. #296).

On July 22, 2019, the Court entered its sealed Order Granting Joint *Ex Parte* Motion to

Confirm Receivership Asset (Dkt. #293).  The Court's Order confirmed that "the Receivership

Estate includes Elkwood Capital, Inc. and that the Receiver's authority over the Receivership

Estates applies to Elkwood Capital, Inc., its bank accounts, and any assets titled in its name or

---

Because documentation is lacking concerning the distribution of said funds, the total amount of withdrawals and how those funds were distributed is unclear.  What is clear, however, is that $65,000 remain in Trinity Escrow.
[3] Praveen Sethi contests the characterization that the $7,300 are connected to Elkwood Capital.  Specifically, Praveen Sethi argues that the $7,300 "was from the personal funds of Praveen Sethi and has nothing do with *Elkwood Capital* or Ms. Martinez's case" (Dkt. #335).  Notably, however, Martinez stated at the Court's hearing that Praveen Sethi was a creditor of Elkwood Capital.

under its custody or control" (Dkt. #293). The Court accordingly confirmed that the Receiver had "authority to take possession of all records related to Elkwood Capital, Inc." (Dkt. #296).

Following the Court's Order on July 22, 2019, attorneys for both the Receiver and the Commission, accompanied by several Dallas Police Officers, entered Martinez' office on July 23, 2019 (Dkt. #296; Dkt. #299; Dkt. #301). The Receiver and the Commission subsequently seized possession of the office as well as various personal property and records within it (Dkt. #296; Dkt. #299; Dkt. #301). What transpired, as well as the characterization of the real and personal property that was seized, is disputed.

At approximately 9:30 a.m. on Tuesday, July 23, 2019, the aforementioned group of attorneys and law enforcement agents arrived at the offices of Elkwood Capital (Dkt. #301). A representative of the building manager informed said group that Elkwood Capital utilized the second floor of the building for its main office and the sixth floor for a small office (Dkt. #301). The fifth floor, which includes a common-space conference room, was also often utilized by Elkwood Capital (Dkt. #301). That conference room, according to the representative, was occupied by the same at the time of the attorneys and officers' arrival (Dkt. #301). Upon inquiring into whether the representative for the building manager was familiar with a Julissa Martinez, the representative said she did not know who Martinez was (Dkt. #301).[4] The representative, however, was "very familiar with Sameer Sethi" (Dkt. #301).

Upon entering the fifth-floor conference room, the Commission and the Receiver found Sameer Sethi training "at least five members of Elkwood Capital's sales staff" (Dkt. #301). Julissa Martinez was not present (Dkt. #301). At this juncture, it does well to briefly summarize how

---

[4] Martinez retorts that the representative's lack of knowledge is inapposite as the management and leasing office has changed personnel multiple times over three years and the fact that Martinez allows her staff to handle her affairs should not be used against her (Dkt. #305).

Elkwood Capital attracts its investors—a matter which goes directly to Sameer Sethi's training programs.

According to Martinez, Martinez' business, Elkwood Capital, is predicated upon the recruitment of new partners into "an LLC or drilling club" (Dkt. #296). To recruit potential partners—who, Martinez claims, must be "Qualified Individuals"[5]—Elkwood Capital distributes informational materials known as Prospective Partnership Memorandum ("PPM") and has its sales staff make calls to prospective investors (Dkt. #296; Dkt. #301). As for the PPM's, the PPM's provide potential partners with, among other things, information on the drilling club, risk factors, and the structure of the drilling club (Dkt. #301, Exhibit 1). Notably, in subsection 4.33, the PPM lists Elkwood Capital's "Prior Activities" (Dkt. #301, Exhibit 1). This subsection states, in relevant part:

> 4.33 Prior Activities. Elkwood Capital, Inc. (a corporation formed in 2003) has offered oil and gas opportunities to investors in the past but has not offered opportunities to acquire working interest in oil and gas developments under the structure of a Drilling Club prior to the Discounted Drilling Club 2019. Elkwood Capital and the Drilling Club will be working with The Petroleum Network, Inc. (TPN), which will serve as the Drilling Clubs' Geologic Correspondent, (See Summary of the Drilling Club).

(Dkt. #301, Exhibit 1). Despite subsection 4.33, Martinez maintains that Elkwood Capital is "very unique" to that of Sethi Petroleum (Dkt. #305). [6] As to the phone calls, Brian Matos, a former

---

[5] According to Martinez, "Qualified Individual" is akin to the SEC's definition of an "accredited investor" (Dkt. #305).
[6] Indeed, Martinez contests the Commission and the Receiver's characterization of Elkwood Capital as a mere continuation of Sethi Petroleum (Dkt. #305). While Sethi Petroleum purportedly did more of the heavy-lifting for its partners—such as selecting locations, operators, wells, drilling costs, etc., for its partners—Elkwood Capital allegedly provides its partners with much more control (Dkt. #305). This control is exercised through "Adoption Ballots," webinar conferences, "Consecration Ballots," "Manager's Ballets," and "Drilling Club Summit[s]" which all provide for a collective decision-making process as to locations, drilling companies, wells, costs, etc. (Dkt. #305). While Martinez describes what each of these mechanisms entail, it is only the existence of these mechanisms of control, which allegedly differentiate Elkwood Capital from Sethi Petroleum, that is pertinent—not their function.

employee of Elkwood Capital,[7] stated in his declaration that Sameer Sethi instructed him to tell prospective investors the following:

- Previous drilling club members had reaped a return three to seven times their original investment.

- The purpose of the drilling club was to purchase distressed working interests in wells being drilled by major oil companies such as ConocoPhillips.

- The memberships were not securities.

- If the prospective investor elected to invest in the drilling club, their investment would be held by a third-party escrow agent until the drilling club had raised $2,000,000. At that point, drilling members would vote on which distressed asset to invest in.

- Various third-parties such as an escrow agent, compliance company, and an oil and gas drilling expert were working with Elkwood to identify the assets to purchase and monitor the investment.

(Dkt. #301, Exhibit 4). Matos' declaration is purportedly corroborated by scripts which were attached to the computer stations in Elkwood Capital when the Commission and the Receiver seized the building. Those scripts included language to the effect of: "We have a group of partners already that have pretty much spoken for the entire program. WE DO NOT NEED ANY MORE PEOPLE" (Dkt. #301, Exhibit 3) (emphasis in original). Notably, no investor had ever seen any returns and no drilling club had ever been formed (Dkt. #301). Further, Elkwood Capital only had

---

[7] Martinez claims that Matos cannot be a credible witness because he "was an entry-level employee who only worked at Elkwood for approximately three weeks and who was not privy to management-level information in regards to the detailed structure of the company . . . ." (Dkt. #305). As such, Martinez maintains that Matos "cannot serve as a credible witness with full understanding of the company's program, offerings or corporate details as he had not even completed full training prior to his departure date . . . ." (Dkt. #305). Assuming *arguendo* that Martinez' contention is true, Matos, in this portion of his declaration, is only talking about what he was trained to do; not about the structure of Elkwood Capital. The Court sees no reason why Matos is not a credible witness in this respect.

one partner, Van Dai, when these scripts were being used. Finally, according to the Recevier, each third-party purportedly involved with Elkwood Capital "[was] associated with Sameer Sethi (The Petroleum Network and Meridian Advisers), [Julissa Martinez] (Capstone Auditing, LLC), or [Sameer Sethi's] close associate and fellow contemnor, John Weber (Trinity Escrow, LLC) (Dkt. #301) (citing Texas Secretary of State Records; Matos Dec., ¶ 8). Nonetheless, Martinez contests Matos, the Commission, and the Receiver's characterizations of the recruitment calls. Specifically, Martinez maintains that any "scripts" that were found were not distributed, or sanctioned, by Elkwood Capital; rather, such "scripts" where the product of each individual employee (Dkt. #305).

According to Martinez, Sameer Sethi did not hold a particular title within the company nor position within its hierarchy. Rather, Sameer Sethi, again, according to Martinez, functioned as an independent contractor who provided aid to Elkwood Capital via his expertise in the oil and gas field.[8] Such aid included helping form Elkwood Capital's business structure, drafting the PPM, and, among other things, training Elkwood Capital's sales staff. This takes the Court back to the events that occurred on July 23, 2019.

As previously stated, attorneys for the Commission and the Receiver were alerted that Elkwood Capital's sales staff were utilizing the fifth-floor conference room when the Commission and the Receiver arrived. When attorneys for the Commission and the Receiver entered the fifth-floor conference room, the Commission and the Receiver discovered Sameer Sethi training Elkwood Capital's sales staff to do what was just discussed: recruit potential investors. The Commission and the Receiver proceeded to halt the proceedings, serve Sameer Sethi with the Joint

---

[8] Sameer Sethi's background with the Commission and the Receiver was not disclosed to potential investors. Martinez claims that this is a non-issue because Sameer Sethi did not have any access to clients, was not an owner or shareholder, and did not have access to Elkwood Capital's finances (Dkt. #305).

Motion (Dkt. #292) and the Court's Order (Dkt. #293), explain the Court Order to Elkwood Capital's sales staff, seize the surroundings, and pack up equipment (Dkt. #299; Dkt. #301). The Commission and the Receiver then proceeded to change the locks on the second- and sixth-floor offices (Dkt. #301). According to the Commission and the Receiver, both entities only seized materials which they contend belonged to, or was under the control of, Elkwood Capital—which, as dictated by the Court's Order, is part of the Receivership Estate (Dkt. #293; Dkt. #299; Dkt. #301). Specifically, the Commission and the Receiver seized Elkwood Capital's office space, computers, notes and written materials, telephonic systems and/or dialing equipment, and office furniture (Dkt. #296; Dkt. #299; Dkt. #301; Dkt. #305). Martinez retorts that such property does not belong to the Receivership Estate and thus the Receiver and the Commission acted unlawfully (Dkt. #296). Specifically, Martinez argues that none of her or her various companies' assets were named in the Receivership Estate; thus, the Commission and the Receiver are abusing their respective power in seizing her assets (Dkt. #296). The Commission and the Receiver, however, maintain that Elkwood Capital is merely an indirect continuation of Sethi Financial Group (Dkt. #299; Dkt. #301).

Along with seizing the real and personal property in Elkwood Capital's office space, the Commission and the Receiver also seized a bank account that belonged to Trinity Escrow, LLC— a third party which the Commission and the Receiver maintain was being used in connection with Elkwood Capital's operations (Dkt. #299; Dkt. #301). Martinez, again, opposes the Commission's and the Receiver's characterization of this bank account as belonging to the Receivership Estate (Dkt. #305). Additionally, the Receiver served LegacyTexas Bank with a subpoena and the Court's Orders (Dkt. #340). In response, LegacyTexas Bank "froze 6 separate deposit accounts associated with Elkwood's business operations" (Dkt. #340). Those bank accounts include:

| Account Holder | Account Number | Frozen Balance (as of 7/23/19) |
|---|---|---|
| Elkwood Capital Inc. | xxxx3696 | $5,605.90 |
| Trinity Escrow, LLC | xxxx0644 | $65,000.00 |
| Sambina Properties | xxxx4590 | $439.85 |
| PSSB Investments LLC | xxxx4582 | $453.35 |
| Praveen & Shahnaz Sethi | xxx1527 | $472.06 |
| Jems Family Holdings | xxxx9043 | $1,105.00 |

(Dkt. #340). According to the Receiver, "[e]ach of the accounts frozen by LegacyTexas Bank on July 23, 2019, are either directly connected to Elkwood's business operations or under the control of persons affiliated with Elkwood's management" (Dkt. #340). The Receiver has further stated that, should its tracing analysis confirm that none of the funds in the frozen accounts are connected to the Receivership Estate, the Receiver will have the accounts "unfrozen" and the funds "released back to the control of the account holders" (Dkt. #340).

Following the seizure of the property so far discussed, the matters between the Commission, Receiver, and Martinez took, as the Commission characterizes it, a "bizarre turn" (Dkt. #301). After Sameer Sethi, Jr. ("Sethi, Jr.")—Sameer Sethi's son—identified himself to the Commission and accompanying law enforcement, Sethi Jr. left the second floor (Dkt. #301). Shortly thereafter, Sethi Jr. allegedly "broke into the small office on the sixth floor and stole items from the Receivership [E]state" (Dkt. #301). This was apparently accomplished by Sethi Jr. "breaking ceiling tiles and climbing over the locked partition" as seen below (Dkt. #301).



Sethi Jr. was then caught via security footage "sneaking out of the building and into a waiting car with a large item – possibly a desktop computer – and a backpack around 10:12 am" (Dkt. #301, Hunter Dec. ¶ 11). Sameer Sethi denied his son's involvement when questioned by the authorities and continued to deny that involvement after being shown the security video footage (Dkt. #301). Despite these denials, Praveen Sethi—Sameer Sethi's father and Sameer Sethi Jr.'s grandfather— brought back two computers to Elkwood's offices at approximately 3:00 pm on July 23, 2019 (Dkt. #301). "Sameer Sethi claims that these are the only items that his son took from the Receiver's [E]state" (Dkt. #301).

On July 30, 2019, Julissa Martinez filed her Motion to Intervene, Request for Leave to File Action Against Receiver, and Request for Preliminary Injunction for Return of Seized Property (Dkt. #296). The Receiver responded on August 1, 2019 by filing Receiver's Objection to Julissa

Martinez's Emergency Motion to Intervene, Request for Leave to File Action Against Receiver, and Request for Preliminary Injunction for Return of Seized Property (Dkt. #299). The Commission responded on August 1, 2019, by filing Plaintiff's Response to Julissa Martinez's Motion to Intervene (Dkt. #301). Aside from opposing Martinez' Motion, the Commission also requests a "criminal referral in connection with Sameer Jr.'s contempt of this Court's order" (Dkt. #301). Martinez filed her Reply to SEC's Response to Julissa Martinez's Motion to Intervene, Request for Leave to File Action Against Receiver and Request for Preliminary Injunction for Return of Seized Property (Dkt. #305) on August 8, 2019. In response to the Commission's request for a criminal referral, Martinez states that she does not wish to pursue any charges against her son, that the Commission and Receiver must prove the property was part of the Receivership Estate to pursue a charge of theft, and that Sameer Sethi, Jr.'s conduct was not sanctioned by his parents who "were extremely upset with him and have properly addressed the issue with their son" (Dkt. #305).

On August 21, 2019, Trinity Escrow, LLC, filed Trinity Escrow, LLC's Emergency Request for Preliminary Injunction for Return of Seized Property (Dkt. #314). Also, on August 21, 2019, Kingsbridge Capital, LLC, filed Kingsbridge Capital, LLC's Emergency Motion to Intervene (Dkt. #316). Kingsbridge Capital's Motion was followed by as second Motion on August 22, 2019, entitled Kingsbridge Capital, LLC's Emergency Motion for Preliminary Injunction for Return of Possession of Seized Property (Dkt. #317). Two other Motions were filed alongside Kingsbridge Capital's second Motion including a Request for Concurrent Hearing on Emergency Motions by Julissa Martinez, Trinity Escrow, LLC, and Kingsbridge Capital, LLC (Dkt. #318) and Trinity Escrow, LLC's Emergency Motion to Intervene (Dkt. #319).

On August 23, 2019, the Court held a hearing on the previously filed Motions. After each party argued the merits of the previous Motions and signaled that they required more time to brief the Court, the Court recessed until October 4, 2019. Before the hearing was continued, however, Van Dai, Martinez' sole partner, filed his Emergency Pro Se Motion to Intervene per Federal Rule of Civil Procedure 24(a)(2) (Dkt. #324). The Court reconvened on October 4, 2019. Van Dai was not present. After hearing arguments, the Court granted the parties two weeks to attempt to resolve the Motions prior to the Court's consideration of said Motions which were taken under advisement (Dkt. #325). The parties, to this date, have been unable to reach a settlement.

On October 25, 2019, Praveen Sethi, who had not been in attendance at the two aforementioned hearings, filed his Emergency Pro Se Motion to Intervene per Federal Rule of Civil Procedure 24(a)(2) (Dkt. #335). On October 28, 2019, Shahnaz Sethi also filed an Emergency Pro Se Motion to Intervene per Federal Rule of Civil Procedure 24(a)(2) (Dkt. #336). Shahnaz Sethi was also not in attendance at either hearing. On October 31, 2019, Praveen Sethi filed a Motion for Hearing per Federal Rule of Civil Procedure 7(b)(1) (Dkt. #337). Then, on November 1, 2019, Shahnaz Sethi also filed an Emergency Motion for Hearing per Federal Rule of Civil Procedure 7(b)(1) (Dkt. #338). Finally, on November 1, 2019, Van Dai filed another Emergency Motion for Hearing per Federal Rule of Civil Procedure 7(b)(1) (Dkt. #339). The Receiver filed Receiver's Omnibus Objection to Emergency Motions to Intervene on November 14, 2019 (Dkt. #340). Praveen and Shahnaz Sethi each filed a Reply to Receiver's Omnibus Objection to Emergency Motions to Intervene on November 22, 2019 (Dkt. #342; Dkt. #343).

# LEGAL STANDARD

I.      Motion to Intervene

Federal Rule of Civil Procedure 24 provides for two forms of intervention: (1) intervention

of right (mandatory intervention); and (2) permissive intervention. FED. R. CIV. P. 24. A proposed

intervenor is entitled to mandatory intervention if the following elements are satisfied:

> (1) the application for intervention must be timely; (2) the applicant must have an interest
> relating to the property or transaction which is the subject of the action; (3) the applicant
> must be so situated that the disposition of the action may, as a practical matter, impair or
> impede his ability to protect that interest; (4) the applicant's interest must be inadequately
> represented by the existing parties to the suit.

FED. R. CIV. P. 24(a)(2); *see also Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (same).[9]

"Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling*

*& Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir.

2007).[10]

If intervention is not mandatory, then it is permissive. A court may permit anyone to

intervene whom "has a claim or defense that shares with the main action a common question of

law or fact" as long as the intervention does not "unduly delay or prejudice the adjudication of the

rights of the original parties." FED. R. CIV. P. 24(b)(1)(b), (b)(3). This decision to permit

intervention is a "wholly discretionary" one, even if there is a common question of law or fact and

the requirements of Rule 24(b) are satisfied. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage*

---

[9] Intervention of right is also permitted when there is an "unconditional right to intervene by a federal statute." FED. R. CIV. P. 24(a)(1). No such statute is cited here. Thus, the Court proceeds without considering 24(a)(1).

[10] Although Rule 24 enumerates threshold requirements for intervention, the Fifth Circuit, in *Texas*, has been clear that those requirements should be "liberally construed." *Texas*, 805 F.3d at 656–57 ("Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir.2014) (citing 6 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 24.03[1][a] (3d ed. 2008) [hereinafter "MOORE'S"]). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994) (internal quotation marks omitted)); *see also Brumfield*, 749 F.3d 339, 341 (5th Cir. 2014) (The inquiry "is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate.") (citing 6 MOORE'S, *supra*, § 24.0l[1][a], at 24; *Edwards v. City of Hous.*, 78 F.3d 983, 999 (5th Cir. 1996) (en banc)).

*Comm'n*, No. 1-15-CV-134, 2015 WL 11613286, at *2 (W.D. Tex. Dec. 22, 2015) (quoting *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984)).

II.     Motion for Preliminary Injunction

Under Rule 65 of the Federal Rules of Civil Procedure, "[e]very order granting an injunction and every restraining order must: (a) state the reasons why it issued; (b) state its terms specifically; and (c) describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d).  A plaintiff seeking a temporary restraining order must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest.  *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).  "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements."  *Id.*  Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing."  *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)).  The decision whether to grant a preliminary injunction lies within the sound discretion of the district court.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

The pending motions can be placed into five categories: (I) motions to intervene; (II) motions for preliminary injunction; (III) motions for costs; (IV) motions for a hearing; and (V) a

request for a criminal referral.  The Court considers each category, and the motions within said category, in turn.

I.	Motion to Intervene

Julissa Martinez, Trinity Escrow, LLC, Kingsbridge Capital, LLC, Van Dai, Praveen Sethi, and Shahnaz Sethi each filed separate motions to intervene.  The Court will address each motion independently.

a.	Julissa Martinez

On July 30, 2019, Julissa Martinez, at that time representing herself *pro se*, filed her Motion to Intervene, Request for Leave to File Action Against Receiver, and Request for Preliminary Injunction for Return of Seized Property (Dkt. #296).  Martinez' Motion to Intervene does not state whether Martinez seeks to intervene as of right or permissively.  Because Martinez meets the intervention requirements of FED. R. CIV. P. 24(a), the Court need not consider FED. R. CIV. P. 24(b).  To establish that one is entitled to intervention of right under FED. R. CIV. P. 24(a), the movant must satisfy four elements.  *See Texas*, 805 F.3d at 657.  Each element, and whether Martinez has established said element, will now be addressed.

i.	Timeliness of Application

According to *Stallworth v. Monsanto Co.*,

"'Timeliness,'" as we recognized in *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1971), "is not a word of exactitude or of precisely measurable dimensions."  Rule 24 fails to define it, and the Advisory Committee Note furnishes no clarification.  As a result, the question whether an application for intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown.

558 F.2d 257, 263 (5th Cir. 1977) (citing *NAACP v. New York*, 413 U.S. 345, 367 (1973); *United States v. United States Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977); *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1071 (5th Cir. 1971)).  Indeed, "timeliness is not limited to chronological

considerations but 'is to be determined from all circumstances.'" *Id.* (citations omitted). Not all circumstances, however, merit equal consideration. Thus, the Fifth Circuit, in *Stallworth*, enumerated four factors that should be considered when evaluating whether a motion to intervene was timely. Those factors, as stated in *Ross v. Marshall*, are:

> Factor 1. The length of time during which the would-be intervenor actually or reasonably should have known of his interest in the case before he petitioned for leave to intervene.

> Factor 2. The extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case.[11]

> Factor 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to Intervene is denied.

> Factor 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

426 F.3d 745, 754 (5th Cir. 2005) (citing *Stallworth*, 558 F.2d at 264–66); *St. Bernard Parish v. Lafarge North America, Inc.*, 914 F.3d 969, 974 (5th Cir. 2019) (same). While the Fifth Circuit has provided this timeliness "tool" to aid a court in complying with Rule 24, the Fifth Circuit has also explicitly observed that a timeliness analysis must remain "contextual." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

Here, it can hardly be disputed that Martinez sought to intervene in a timely manner. Attorneys for both the Receiver and the Commission entered Martinez' office and seized possession of the office, the personal property, and the records within it on July 23, 2019. Martinez filed her Motion to Intervene seven days later. Martinez had not been named under the

---

[11] "For the purpose of determining whether an application for intervention is timely, the relevant issue is not how much prejudice would result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest in the case." *Stallworth*, 558 F.2d at 267.

Receivership Estate, and prior to July 22, 2019, was not suspected—per the Court's knowledge—of having any assets connected to said estate. Upon the Commission and Receiver's seizure of Martinez' property and assets, Martinez immediately filed the current Motion. *See Stallworth*, 558 F.2d at 264–66. The Commission and Receiver cannot reasonably point to any prejudice that would befall them based upon Martinez' timely application. *See id.* Further, as will be addressed below, Martinez could very well be prejudiced if the Court were to deny her ability to intervene. Given the haste with which she filed her application, the Court cannot reasonably allow such prejudice to befall Martinez. *See id.*[12] Martinez application for intervention is consequently timely. Fᴇᴅ. R. Cɪᴠ. P. 24(a)(2).

### ii.    Interest in the Property

According to the Fifth Circuit, "an interest that is concrete, personalized, and legally protectable is sufficient to support intervention." *Texas*, 805 F.3d at 658; *see also In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 250 (5th Cir. 2009) (stating that an interest is concrete, personalized and legally protectable if the interest is "one which the *substantive* law recognizes as belonging to or being owned by the applicant.") (citing *Cajun Elect. Power Co-op., Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 119 (5th Cir. 1991) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984) (en banc))). For example, a property interest is "the most elementary type of right that Rule 24(a) is designed to protect." *Id.* (citing *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970)). This is because the Fifth Circuit has deemed that property interests are undoubtedly "concrete, specific to the person possessing the right, and legally protectable." *Id.* (citing 6 Mᴏᴏʀᴇ's § 24.03[2][a] ("Motions to intervene in

---

[12] There are no unusual circumstances militating for or against acceptance of Martinez' application in this case. *See Stallworth*, 558 F.2d at 264–66.

which the proposed intervenor advances a clear property interest present the easiest cases for intervention.")).

At stake here is office space, various personal property within that office, and bank accounts that Martinez contends are her property, not the Receivership Estate's. As noted, a property interest, such as an interest in an office space, the furniture within an office, or the assets of a business, "is the most elementary type of right that Rule 24(a) is designed to protect." *Texas*, 805 F.3d at 658. The Commission and Receiver cannot reasonably argue otherwise. *Id.* Accordingly, Martinez has asserted an interest in property that is concrete, personalized, legally protectable, and thus "sufficient to support intervention." *Id.*

### iii. Situation of the Applicant

Pursuant to Rule 24(a)(2), once a movant has established a sufficient interest in the subject of the action, the applicant must also establish that he or she is "so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest." FED. R. CIV. P. 24(a)(2). The "impairment requirement," as it has been labeled by courts, "does not demand that the movant be bound by a possible future judgment." *Brumfield*, 749 F.3d at 345. In other words, the test is no longer one of determining whether *res judicata* will apply. Rather, "the current requirement is a great liberalization of the prior rule." *Id.* (citing 6 MOORE'S § 24.03[3][a], at 24–41); *see also Edwards,* 78 F.3d at 1004–05 ("Rule 24(a) was amended in 1966 to no longer require a showing by the applicant for intervention that he will be bound by the disposition of the action. The current practical impairment standard represents a liberalization of the prerequisites to intervention.") (citing *United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991); *United States v. City of Jackson*, 519 F.2d 1147, 1150 (5th Cir. 1975)). Under this new

impairment requirement, "[t]he impairment must be "practical." *Id.* A merely "theoretical" impairment will not suffice. *Id.*

Should the Commission and the Receiver be permitted to continue exercising control over assets and property which Martinez maintains are hers without any challenge, Martinez will be stripped of her ability to utilize said property. Practically speaking, not permitting Martinez to intervene will be tantamount to telling Martinez that she must accept her fate, whether that fate is right or wrong, without any judicial process. Martinez has established a sufficient interest in the subject of the action; namely, Martinez has an interest in the property which has been seized. FED. R. CIV. P. 24(a)(2). Martinez has also established that she is "so situated that the disposition of the action may, as a practical matter, impair or impede [her] ability to protect that interest." *Id.* Because the Court is of the opinion that Martinez has carried her burden in establishing the impairment requirement, the Court continues to the final element Martinez must satisfy: that she would be inadequately represented if not permitted to intervene. *Id.*

### iv. Adequacy of Representation

"The burden of establishing inadequate representation is on the applicant for intervention." *Edwards*, 78 F.3d at 1005. The applicant need not show that "the representation by existing parties will be, for certain, inadequate." *Texas*, 805 F.3d at 661 (citing 6 MOORE'S § 24.03[4][a][i]). Rather, "the Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate." *Id.* (citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972)); *see also* 7C CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1909 (3d ed. 2007) ("[T]he rule is satisfied if there is a serious possibility that the representation may be inadequate . . . ."). The Fifth Circuit has characterized the intervenor's burden as "minimal." *Edwards,* 78 F.3d at 1005; *see also Brumfield*, 749 F.3d at 346 ("The lack of unity in all objectives,

combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate

that representation *may* be inadequate . . . ."); *cf. Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994)

(holding that the Thurgood Marshall Legal Society and Black Pre-Law Association's intervention

arguments, which were at a "high level of generality," did not demonstrate how the alleged

divergent interests would have any concrete effect on the litigation or result in the State "not

strongly defend[ing] its affirmative action program").

Notwithstanding said characterization, the Fifth Circuit has made clear that an applicant's

burden "cannot be treated as so minimal as to write the requirement completely out of the rule."

*Texas*, 805 F.3d at 661 (citing *Cajun Elec. Power Co–op.*, 940 F.2d 117, 120 (5th Cir. 1991)

(internal quotation marks omitted); *Veasey v. Perry*, 577 F. App'x. 261, 263 (5th Cir. 2014)

("[T]his requirement must have some teeth.")). Thus, there are two possible presumptions of

adequate representation that an intervenor must overcome, depending, that is, on the circumstances

of the action. *Edwards,* 78 F.3d at 1005. One presumption arises, as *Texas* put it, when "the

would-be intervenor has the same ultimate objective as a party to the lawsuit." *Texas*, 805 F.3d at

661 (citing *Edwards,* 78 F.3d at 1005). If this "same-objective" presumption applies, "the

applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of

the existing party to overcome the presumption." *Id.* The other presumption arises "when the

putative representative is a governmental body or officer charged by law with representing the

interests of the [intervenor]." *Id.* The "government-representative" presumption may be defeated

if the would-be intervenor shows that "its interest is in fact different from that of the [governmental

entity] and that the interest will not be represented by [it]." *Id.* (alterations in original) (internal

quotation marks omitted).

Here, there is no presumption for Martinez to overcome. Sameer Sethi and Sethi Petroleum, LLC, do not have an interest in the property in dispute. To be sure, the office lease is in Martinez' name, the personal property was purchased by Martinez, and the seized assets are held in companies owned and managed by Martinez.[13] *Id.* Thus, the Court need only find that Martinez' interests "may be inadequate[ly]" represented. *Id.* Martinez has carried her "minimal" burden. *Edwards,* 78 F.3d at 1005. Put simply, although the Court finds that Martinez need not overcome a presumption, the burden Martinez would have to carry to overcome the "same-objective" presumption, should it have applied, is met nonetheless—a fact which illustrates the inadequate representation of Martinez' interests. Sameer Sethi and Sethi Petroleum, the named Defendants, have interests that may diverge from that of Martinez which make them inadequate representatives of Martinez. Specifically, given Sameer Sethi and Sethi Petroleum's longstanding conflict with the Commission and the Receiver, Sameer Sethi and Sethi Petroleum have incentives to settle this dispute, assuage any tension with the Commission and the Receiver to demonstrate some arguable compliance with the Court's previous orders, and/or to permit the surrender of Elkwood Capital to prevent a costly court-battle. These interests are compounded even further when considering the Court's Final Order of disgorgement which has already depleted Sameer Sethi's assets. Meanwhile, Martinez, who claims she is not subject to the Receivership Estate, has a diverging interest to not settle, but rather to litigate this matter in hopes of regaining possession of what she claims is her property, not the Receivership Estate's. These diverging interests, along with Martinez' establishment of the previous three elements, convince the Court that Martinez is entitled to intervention as of right pursuant to Fed. R. Civ. P. 24(a)(2). *See Brumfield*, 749 F.3d at 346 (finding a divergence of interests between the Jane Does and the Louisiana government where

---

[13] As evidenced by the Background Section, there is no "governmental body or officer charged by law with representing the interests" of Martinez. *Texas*, 805 F.3d at 661 (citing *Edwards,* 78 F.3d at 1005).

Louisiana sought to maintain its relationship with the federal government and with the courts having continuing desegregation jurisdiction while the parents had no such interest).

      b.  Trinity Escrow, LLC & Kingsbridge Capital, LLC

Trinity Escrow, LLC filed Trinity Escrow, LLC's Emergency Motion to Intervene on August 22, 2019. Kingsbridge Capital, LLC, filed Kingsbridge Capital, LLC's Emergency Motion to Intervene on August 21, 2019. Like Martinez, Trinity Escrow and Kingsbridge Capital fail to specify whether they seek intervention of right or permissive intervention. The Court will consequently consider each method of intervention.

      i.  Intervention of Right

Neither Trinity Escrow nor Kingsbridge Capital—which are both owned and managed by Martinez—make any colorable attempt to argue that Martinez will not adequately represent them. As such, the Trinity Escrow and Kingsbridge Capital have failed to establish all four elements under FED. R. CIV. P. 24(a) and are thus precluded from intervening as a matter of right. *See Haspel & Davis Milling & Planting Co.*, 493 F.3d at 578.

      ii.  Permissive Intervention

As previously stated, if intervention is not mandatory, then it is permissive. Intervention is not warranted here. Martinez adequately represents the interests of Trinity Escrow and Kingsbridge Capital. To be sure, Martinez owns and manages each entity. To permit intervention in this action would be duplicative. Not only would it be duplicative, it would be harmful to investors who have been defrauded by Sameer Sethi and Sethi Petroleum as more of the Receivership Estate would have to be utilized to litigate the current matter. The Court, in its discretion, sees no reason why Trinity Escrow and Kingsbridge Capital should be permitted to

drain investors of more funds when their interests are adequately represented. *See Bush*, 740 F.2d at 359. Therefore, Trinity Escrow and Kingsbridge Capital's Motions to Intervene are denied.

### c. Van Dai, Praveen Sethi, & Shahnaz Sethi

Van Dai filed his Pro Se Motion to Intervene Per Federal Rule of Civil Procedure 24(a)(2) on October 1, 2019. Praveen Sethi filed his Emergency Pro Se Motion to Intervene Per Federal Rule of Civil Procedure 24(a)(2) on October 25, 2019. Shahnaz Sethi filed her Emergency Pro Se Motion to Intervene Per Federal Rule of Civil Procedure 24(a)(2) on October 25, 2019. Praveen Sethi and Shahnaz Sethi's Motions to Intervene are essentially carbon copies of Van Dai's Motion to Intervene. For that reason, the Court will consider Van Dai, Praveen Sethi, and Shahnaz Sethi's Motions concurrently, when possible, while accounting for any factual discrepancies.

### i. Timeliness of Applications

As previously stated, timeliness "is not a word of exactitude or of precisely measurable dimensions." *McDonald*, 430 F.2d at 1074. Rather, timeliness is a determination that is "largely committed to the discretion of the district court . . . ." *Stallworth*, 558 F.2d at 263. To guide such discretion, the Fifth Circuit, in *Stallworth*, enumerated four factors that should be considered when evaluating whether a motion to intervene was timely. Having considered said factors, the Court, in its discretion, is of the opinion that Van Dai, Praveen Sethi, and Shahnaz Sethi's applications for intervention of right are timely.

Van Dai was alerted that his funds in Elkwood Capital were frozen on August 1, 2019. Praveen and Shahnaz Sethi simply claim that there was a delay in informing them of the present proceedings. Despite eventually having knowledge of their interest in the case, Van Dai, Praveen Sethi, and Shahnaz Sethi each allege that they were consistently reassured by Martinez that the freezing of said funds "should last no more than a few days to a few weeks" (Dkt. #324; Dkt. #335;

Dkt. #336). After those reassurances had proven faulty, however, Van Dai "became increasingly worried and [sought to intervene]" (Dkt. #324). Praveen and Shahnaz Sethi followed suit shortly thereafter (Dkt. #335; Dkt. #336). While Van Dai had actual knowledge of the events in this case for two months, and Praveen and Shahnaz Sethi had actual knowledge for approximately three months, each movant's delay in filing their application was reasonable given that the manager of the company in which each movant had assets was reassuring them of their fund's safety. *Ross*, 426 F.3d at 754. Moreover, no party can reasonably argue that they would suffer some form of prejudice by Van Dai, Praveen Sethi, or Shahnaz Sethi's possible intervention some two- or three-months after Julissa Martinez' would-be intervention. *Id.* On the other hand, each movant can very well point to a respective prejudice that would befall him or her should they not be permitted to intervene: (1) Van Dai – a loss of the ability to defend the assets, some $100,000, he placed in Elkwood Capital; (2) Praveen Sethi – a loss of the ability to defend approximately $7,300 spread across four accounts at LegacyTexas Bank; and (3) Shahnaz Sethi – a loss of the ability to defend a loan of $100,000. *Id.* Finally, the unusual circumstances of Martinez reassuring each movant that his or her funds would be adequately protected and that they need not worry about the ongoing matter persuades the Court that Van Dai, Praveen Sethi, and Shahnaz Sethi's application should not be deemed untimely. Van Dai, Praveen Sethi, and Shahnaz Sethi's applications are accordingly deemed timely.

ii. Interest in the Property

Van Dai has approximately $100,000 of personal funds invested in Elkwood Capital. Praveen Sethi has approximately $7,300 spread across four accounts at LegacyTexas Bank. And Shahnaz Sethi has a loan to Martinez of purportedly $100,000. The seizure of these funds, among other things, is subject matter of this litigation. No one disputes these facts. *See* Dkt. #340

("During the hearings, Martinez testified that a substantial portion of the funding for Elkwood's operations was provided by Praveen Sethi and Shahnaz Sethi. Likewise, Martinez testified that the funds held on deposit in the Trinity Escrow account at LegacyTexas Bank were procured from funds deposited by Van Dai . . . ."). The Court thus finds that Van Dai, Praveen Sethi, and Shahnaz Sethi have each asserted an interest in property that is concrete, personalized, legally protectable, and thus "sufficient to support intervention." *Texas*, 805 F.3d at 658.

### iii. Situation of the Applicant

Van Dai, Praveen Sethi, and Shahnaz Sethi each argue that a favorable judgment for either currently existing party would require him or her to "sustain an action against the prevailing party to recover funds, which, by that time might no longer exist . . . ." (Dkt. #324; Dkt. #335; Dkt. #336). Seeing no argument to the contrary, the Court finds that Van Dai has established that his situation impedes his ability to protect his interest.

### iv. Adequacy of Representation

As previously stated, should a presumption of adequate representation apply to a would-be intervenor, that would-be intervenor must overcome that presumption before intervention will be permitted. *Edwards,* 78 F.3d at 1005. One of those presumptions arises when "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Texas*, 805 F.3d at 661 (citing *Edwards,* 78 F.3d at 1005). To overcome the "same-objective" presumption, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.*

The crux of whether Van Dai, Praveen Sethi, or Shahnaz Sethi are entitled to intervene as a matter of right concerns whether Martinez—who has been permitted to intervene pursuant to FED. R. CIV. P. 24(a)—will adequately represent the would-be intervenors. The movants argue no.

According to Van Dai, Praveen Sethi, and Shahnaz Sethi, "the interests of the parties [diverge] from the intervenor in that that the two parties wish to have possession of [the property each movant claims] given or returned to them" (Dkt. #324; Dkt. #335; Dkt. #336). Again, the property claimed by Van Dai, Praveen Sethi, and Shahnaz Sethi consists of, respectively, a $100,000 investment, $7,300 spread across four accounts at LegacyTexas Bank, and a purported loan of $100,000 (Dkt. #324; Dkt. #335; Dkt. #336).

Here, Julissa Martinez, Van Dai, Praveen Sethi, and Shahnaz Sethi all have the same ultimate objective: to regain possession of what they claim is their property from the Commission and the Receiver. As such, the "same-objective" presumption applies. *See Texas*, 805 F.3d at 661 (citing *Edwards,* 78 F.3d at 1005). Van Dai, Praveen Sethi, and Shahnaz Sethi maintain that they can overcome this presumption because there is a divergence of interests. Namely, each applicant maintains that while Martinez wishes to have possession of the property that each applicant claims, each applicant wishes to have possession of their respective property returned to them. While it is readily apparent that there is some divergence in interests here, none of the movants expressed any misgivings in how this variance would concretely manifest itself such that Martinez could not adequately represent the applicants. The Court is of the opinion that Van Dai, Praveen Sethi, and Shahnaz Sethi did not overcome the same-objective presumption.

The issue in the present action is whether the Commission and the Receiver must return the confiscated property and assets to Martinez and her companies—Elkwood Capital and Trinity Escrow. Each of the applicants' funds are, or are suspected of being, connected to Elkwood Capital. Indeed, Van Dai invested in Elkwood Capital and Shahnaz Sethi made a loan to Martinez to aid her in developing Elkwood Capital. Further, Praveen Sethi has $7,300 spread across four bank accounts located at LegacyTexas Bank—funds which the Receiver suspects are being used

by, or are under the control of, Elkwood Capital. Thus, the only interests that the applicants can have in the present matter are interests directly related to Elkwood Capital and the Receivership Estate. Martinez adequately represents those interests.

Martinez has sought to regain possession of all Elkwood Capital funds as well as the assets from each respective bank account connected to, or suspected of being connected to, Elkwood Capital. This end has required Martinez to represent each applicants' interests. Specifically, as to Van Dai, Martinez agreed at the Court's hearing with the Receiver that Van Dai should receive his investment back directly after arguing that Elkwood Capital's assets should not fall into the Receivership Estate. As to Praveen Sethi, Martinez has demanded that all funds connected to Elkwood Capital—including those assets spread across various accounts at LegacyTexas Bank— be returned. Moreover, the Receiver has expressly stated, in agreement with Martinez' requests, that, pending the outcome of the Receiver's investigation, any funds in frozen accounts that are found to not be connected to the Receivership Estate, will be unfrozen. This means that Praveen Sethi will automatically regain possession of his assets, as Martinez demands, if they are not connected to the Receivership Estate, Elkwood Capital, or Trinity Escrow as he contends. Finally, as to Shahnaz Sethi, Martinez has argued that all assets belonging to Elkwood Capital should be returned. Such argument necessarily encompasses the loan that Shahnaz Sethi gave to Martinez. Importantly, Shahnaz Sethi provides the Court with no authority that it may strip Martinez of said loan if the loan is not found to be part of the Receivership Estate. Again, the issue in the present action is whether the Commission and the Receiver must return the confiscated property and assets to Martinez and her companies; not whether Martinez must return said funds to individual creditors.[14] Therefore, without more, the Court finds that Martinez adequately represents Shahnaz

_____

[14] Should the applicants oppose this outcome and claim that they lost their day in court, the Court notes that the additional arguments provided by the applicants would not have changed the Court's calculus as to the preliminary

Sethi's interest in attempting to prevent the loan from falling into the Receivership Estate. Because Van Dai, Praveen Sethi, and Shahnaz Sethi failed to demonstrate how the alleged divergent interests in possession would have any concrete effect on the litigation or result in Martinez not adequately representing the would-be intervenors, the Court finds that the would-be intervenors have not carried their burden. *See Hopwood*, 21 F.3d at 605.

Having reviewed and considered the relevant motions and pleadings, the Court finds that only Julissa Martinez may intervene in the current action. Trinity Escrow, LLC, Kingsbridge Capital, LLC, Van Dai, Praveen Sethi, and Shahnaz Sethi's Motions to Intervene are accordingly denied.

II.      Motion for Preliminary Injunction

Julissa Martinez, Trinity Escrow, LLC, and Kingsbridge Capital, LLC, each request a preliminary injunction for the return of the seized property which took place on July 23, 2019. Because only Martinez was permitted to intervene in this action, only Martinez' Motion for Preliminary Injunction will be considered by the Court. The remaining Motions are denied. As previously stated, a plaintiff/movant seeking a preliminary injunction must establish four elements. *Nichols*, 532 F.3d at 372. The Court finds that Martinez has not carried her burden in establishing

---

injunction. The Commission and the Receiver carried their burdens in proving that Van Dai and Shahnaz Sethi's funds are part of the Receivership Estate—and the Receiver has noted that any funds held at LegacyTexas Bank which are found to not belong to said Estate will be released to those who hold the funds. Thus, the applicants' arguments as to who should regain possession are inapposite. Simply put, such arguments focused on a potential step-two of the present battle, when step-one had already been lost.

a likelihood of success on the merits.  Accordingly, the Court need not consider the remaining factors under Rule 65.

   a.   Whether there is a Likelihood of Success on the Merits.

"*Pro se* litigants are entitled to liberal construction of their pleadings."  *Flores v. United States Attorney General*, 2015 WL 1088782, at *3 n.2 (E.D. Tex. Mar. 4, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (A document filed *pro se* is "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . .") (internal citations omitted).  At the outset, the Court notes two things: (1) Julissa Martinez filed her Motion for a Preliminary Injunction *pro se*; and (2) Martinez' Motion mentions no cause of action nor claim.  Additionally, it is worth noting that Martinez—along with the Commission and the Receiver—fails to provide the Court with much legal authority for her arguments.  The Court will construe Martinez' Motion liberally given that she was *pro se* when that Motion was filed.  Accordingly, the Court will not fault Martinez for the absence of a cause of action or claim.  With that being said, Martinez still fails to carry her burden in establishing a likelihood of success on the merits.  Elkwood Capital belongs to the Receivership Estate.

A district court has "broad powers and wide discretion to determine the appropriate relief in an equity receivership."  *S.E.C. v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (citing *S.E.C. v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982)).  "These powers include the court's 'inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by

the SEC to enforce the federal securities laws.'" *Id.* (citing *S.E.C. v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)).

On July 13, 2015, the Court entered its Order Granting the Receiver's Motion to Confirm Receivership Assets/Entities. Among those assets and entities confirmed was Sethi Financial Group, Inc. The Receiver was accordingly authorized to have complete control, possession, and custody of Sethi Financial Group, Inc. This meant that only the Receiver, pursuant to the Court's Order, had the authority to change the name of, utilize, or control Sethi Financial Group, Inc. Such information has been on the record since July of 2015. *See* Dkt. #56, Exhibit A.

Despite these circumstances, Praveen Sethi sought a reinstatement and formal name change to Sethi Financial Group through an amendment with the Texas Secretary of State. The Texas Secretary of State approved these amendments. Following the Secretary of State's approval, Julissa Martinez utilized the Receivership Estate's entity to run her own oil and gas business. No permission was given to Martinez to utilize said entity.

On July 22, 2019, the Court stated, in no uncertain terms, "that the Receivership Estate includes Elkwood Capital, Inc. and that the Receiver's authority over the Receivership Estates applies to Elkwood Capital, Inc., its bank accounts, and any assets titled in its name or under its custody or control" (Dkt. #293). Martinez now concedes that Sethi Financial Group was part of the Receivership Estate. Yet Martinez still argues that Elkwood Capital is not. Martinez is mistaken.

The Receivership Estate was created to prevent Sameer Sethi and his various entities from perpetrating a fraud on the public. Thus, various entities were confirmed as Receivership Estate entities that Sameer Sethi could no longer exercise control over; this included Sethi Financial.

While Martinez may claim that Elkwood Capital is fundamentally distinct from Sethi Financial, the facts tell a different story.

First, Sameer Sethi's parents—Praveen Sethi and Shahnaz Sethi—provided a great deal of funding for Elkwood Capital. While this is not in and of itself impermissible, this fact, when coupled with the remaining facts, paints a troubling picture. Second, Sameer Sethi provided training for Elkwood Capital's sales staff, helped write Elkwood Capital's Prospective Partnership Memorandum, provided a shell corporation—Sethi Financial Group—from within the Receivership Estate to be used for Elkwood Capital's incorporation, created Elkwood Capital's business model, and even benefited from Elkwood Capital's investments by having a creditor of his—Ray Sharp—paid off. While Martinez may be directly in charge of Elkwood Capital, it blinks reality to deny that Sameer Sethi has an integral role in controlling Elkwood Capital. Third, transcripts were seized which contained notes from Sameer Sethi's trainings outlining a line of salesmanship that was misleading at best. While Martinez may deny that Elkwood Capital sanctioned the use of such transcripts, Matos' testimony reveals that this line of salesmanship was used nonetheless. Fourth, the third-parties associated with Elkwood Capital, such as the escrow agent, compliance company, and an oil and gas drilling expert were associated with Sameer Sethi or those close to him. Namely, Sameer Sethi controls The Petroleum Network and Meridian Advisers, Julissa Martinez controls Capstone Auditing, LLC and Trinity Escrow, LLC, and John Weber—Sameer Sethi's associate and fellow contemnor who established Cambrian Resources to evade the Court's prior injunction—is associated with Trinity Escrow, LLC. Finally, irrespective of a purportedly different strategy which allows greater investor control, Elwood Capital, like Sethi Petroleum, is engaged in a scheme of misleading potential investors in the oil and gas arena. Specifically, Elkwood Capital sales staff told prospective investors that "[p]revious drilling club

members had reaped a return three to seven times their original investment," and that "[w]e have a group of partners already that have pretty much spoken for the entire program." (Dkt. #301, Exhibit 3; Dkt. #301, Exhibit 4). Neither claim is true.[15] The Receiver and the Commission claim, based on the aforementioned facts, that Sameer Sethi is using Elkwood Capital to indirectly perpetrate another fraud on the public—a fraud which Martinez is a willing participant in. The Court agrees.

Despite these facts, Martinez still argues that Elkwood Capital should not fall under the Receivership Estate. Martinez makes two arguments for why Elkwood Capital does not belong to the Receivership Estate: (1) what amounts to a mistake of fact defense; and (2) that any attempt to incorporate Elkwood Capital was a defective, ultra vires act which meant that Martinez was operating as a sole proprietor rather than Elkwood Capital. Martinez' arguments hold no water. First, as to Martinez' claim that she was mistaken about the nature of the Sethi Financial Group entity, it is a well-known tenet of law that mistake of fact is generally no defense. *See Heien v. North Carolina*, 574 U.S. 54, 67 (2014). Sameer Sethi and Praveen Sethi were well aware of the Court's prior Order which listed Sethi Financial Group as a Receivership Estate entity. Moreover, Martinez herself states that she was aware of the prior matters before the Court. While the Court agrees with Martinez that it is unlikely that she would have knowingly utilized an entity from the Receivership Estate to incorporate Elkwood Capital, the simple truth is that Martinez nonetheless used Sethi Financial Group when such use was avoidable. The Court's Order has been published for years. The Court's Order was accessible for Martinez or the Sethi's to consult. The Court's Order was clear and unequivocally stated that only the Receiver could utilize or control Sethi

---

[15] In addition to these statements, Sameer Sethi admitted on cross-examination that he trained Elkwood Capital's sales staff to lie to prospective investors and tell them that they had meetings in thirty minutes and thus had to speak quickly. According to Sameer Sethi, this would give off the impression that the sales staff were successful and elite despite the fact that no such meetings were scheduled.

Financial. And the Court's Order was made known to Sameer Sethi—who was legally bound by the Order—upon its publication. To allow Martinez and the Sethi's to utilize such entity and then claim ignorance would allow for these parties to continuously undermine the Court's Order and harm the interests of the very investors the Court's Order intends to protect. The Court, in its discretion, cannot allow such harm to befall the Receivership Estate. *See Kaleta*, 530 F. App'x at 362. Thus, Martinez' first defense fails.

Second, Martinez claims that any attempt to incorporate Elkwood Capital was a defective, ultra vires act which meant that Martinez was operating as a sole proprietor rather than Elkwood Capital. This means, according to Martinez' theory, that she cannot be deemed to have been operating under a Receivership Estate entity because she never had the opportunity to utilize the entity in the first place. To be sure, Martinez is partially correct. Only the Receiver was authorized to control or possession the Receivership Estate and any assets traceable to the Receivership Estate. Nonetheless, Martinez' second argument also fails. First, Martinez provides the Court with no legal authority for her ultra vires theory. Likewise, Martinez' attorney, who eventually filed an appearance in the case and represented Martinez at the Court's hearing, never provided the Court with any legal authority supporting Martinez' ultra vires theory—a theory counsel frequently espoused at the Court's hearing. The Court will not ground its opinion in this failure to render the Court with complete briefing because the Court recognizes that Martinez was *pro se* at the time her briefing was filed. *See Haines*, 404 U.S. at 520. Notwithstanding the Court's leniency, Martinez' theory still fails.

"An ultra vires act is one beyond the purposes or powers of a corporation." 20 Elizabeth S. Miller and Robert A. Ragazzo, *Texas Practice Series: Business Organizations* § 27.9 (3d ed. 2019). While the ultra vires doctrine was historically utilized to restrain a corporation to its narrow

sphere, the doctrine, and its scope, have shifted over time. In Texas, § 20.002 of the Business Organizations Code of Texas has placed "strict limitations on the capacity to challenge ultra vires conduct." *Id.* Specifically, § 20.002(a) provides that "lack of capacity of a corporation may *not* be the basis of any claim or defense at law or in equity." TEX. BUS. ORGS. CODE ANN. § 20.002(a). Section 20.002(a) has essentially provided that "a corporation, and any third party with whom it deals, are unable to assert or escape obligations based on the ultra vires doctrine." *Texas Practice Series: Business Organizations* § 27.9.

Here, the Texas Secretary of State's records indicate that Elkwood Capital, Inc, exists, was formerly known as Sethi Financial Group, Inc., and that Elkwood Capital's registered agent is Julissa Martinez. *See* Dkt. #299, Exhibit A. Martinez was undoubtedly using Sethi Financial Group as an entity to run Elkwood Capital. Martinez cannot escape the consequence of those actions by now asserting the ultra vires doctrine as a defense. *See* TEX. BUS. ORGS. CODE ANN. § 20.002(a). Thus, Martinez' ultra vires theory fails as a defense.

As has been previously stated, the Court, in its discretion, has the power to protect the Receivership Estate by determining appropriate relief when necessary. *See Kaleta*, 530 F. App'x at 362. Martinez has not convinced the Court that such relief should have been withheld when it entered its Order confirming the Commission and the Receiver's authority to seize Elkwood Capital and its assets. Moreover, Martinez has not established a likelihood of success on the merits. Martinez has not asserted a cause of action or a claim—which the Court has looked past— and even from a liberal construction of her pleadings, Martinez' has failed to demonstrate any wrongdoing on the Commission or the Receiver's part. The Commission and the Receiver acted to protect the Receivership Estate. The facts support their actions. Moreover, Martinez has failed to defend her actions by maintaining that her actions were grounded in a mistake of fact or an ultra

vires act.  Accordingly, the Court finds that Martinez has failed to carry her burden in establishing

a likelihood of success on the merits.

        b.   Whether There is a Substantial Threat that Plaintiff will Suffer Irreparable Harm
           if the Injunction is Not Granted.

Had Martinez carried her burden on the first element for a preliminary injunction, the Court

would have been inclined to find that Martinez would suffer irreparable harm without the Court's

entrance of a preliminary injunction.  Martinez, however, did not carry that burden.  There is no

threat that Martinez will suffer some irreparable harm here because the assets Martinez claims are

hers are simply not; rather, the assets belong to the Receivership Estate.  Consequently, Martinez

has not carried her burden in establishing that she will suffer some irreparable harm if an injunction

is not granted.  *See Nichols*, 532 F.3d at 372.

        c.   Whether the Threatened Injury Outweighs any Damage that the Injunction
           Might Cause the Defendant.

The Court found no threatened injury given that Martinez used a Receivership Estate entity

to run her business which is engaging in a scheme of fraud.  To enter an injunction, given such a

finding, would directly damage the Commission and the Receiver as they seek to maintain the

integrity of the Receivership Estate and protect the public from fraud.  Thus, Martinez has failed

to carry her burden in establishing that some threatened injury outweighs any damage that the

injunction might cause the Commission and the Receiver.  *See id.*

        d.   Whether the Injunction will Disserve the Public Interest.

Finally, an injunction here would disserve the public interest.  As the Court previously

found, Sameer Sethi is using Elkwood Capital to indirectly perpetrate another fraud on the

public—a fraud which Martinez is a willing participant in.  Entering an injunction here would

permit Martinez and Sethi to continue engaging in their scheme and would consequently result in

further harm to the public.  Further, entering an injunction would result in the loss of more

Receivership Estate assets which could otherwise be used to make previously defrauded investors whole. As such, the Court finds that Martinez has failed to carry her burden on the final element for a preliminary injunction. *See Nichols*, 532 F.3d at 372.

Because Martinez failed to carry her burden on each element for a preliminary injunction, Martinez is not entitled to the extraordinary remedy of a preliminary injunction. *See id.* The Court accordingly finds that Martinez' Motion for a Preliminary Injunction must be denied. All assets that the Receiver and Commission seized which were connected to, or under the control of, Elkwood Capital are now properly included in the Receivership Estate. This includes the office space, computers, notes and written materials, telephonic systems and/or dialing equipment, and office furniture which were seized.[16] At this moment, according to the Receiver, the accounts held at LegacyTexas Bank are still undergoing a tracing analysis to determine the extent to which said accounts are connected to, or under the control of, Elkwood Capital. The Receiver is to provide notice within one (1) month of the publishing of this Memorandum Opinion & Order on the status of those accounts. Any issues with those accounts, should they arise, will be handled then.

III.     Motion for Costs

A district court "is afforded broad discretion in allowing the reimbursement of costs." *See Jonathan C. v. Hawkins*, 2007 WL 1138432, at *6 (E.D. TX Apr. 16, 2007) (citing *Loewen v. Turnipseed*, 505 F. Supp. 512, 517 (N.D. Miss. 1980)); *see also Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1049 (5th Cir.1998) ("The district court has broad discretion in taxing costs, and we will reverse only upon a clear showing of abuse of discretion.") (citing *Alberti v. Klevenhagen*, 46 F.3d 1347, 1358 (5th Cir.1995)); *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 216 (5th

---

[16] Martinez claims that any personal property used by her at Elkwood Capital was never transferred to Elkwood Capital and was purchased by her personal finances. Irrespective of this claim, any such property was used or under the control of Elkwood Capital. The Court's Order accordingly applies to all such property.

Cir.1991) ("A trial judge has wide discretion with regard to the costs in a case and may order each party to bear his own costs."). "The judge cannot, however, order the prevailing party to share, or shoulder all of, the costs of the non-prevailing party unless the costs serve as a sanction." *Hall*, 937 F.2d at 216 (citing *Three–Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993, 999 (5th Cir.1976)).  A court must state the reasoning behind its decision should the court determine that the prevailing party should not be awarded costs. *Id.* (citing *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir. 1977)); *see also Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 539 (5th Cir. 1990) ("[T]he district court is required to provide justification for its actions [in denying costs].").

Martinez and the Commission each request costs for this matter.  Further, Martinez claims that the Receiver damaged her office space when seizing what was formerly Elkwood Capital's property; she consequently requests damages.  As to the latter request, any of the alleged damage that occurred to the Elkwood Capital office space or property, which the Receiver disputes, is now damage to Receivership Entity property.  As such, Martinez' request is moot as she no longer owns the property; rather, it is now included in the Receivership Estate.  As to the request for costs from Martinez and the Commission, the Court, in its discretion, is unpersuaded that either party should bear the costs of the other.  *See Hawkins*, 2007 WL 1138432, at *6.  Martinez and the Commission's requests for costs are accordingly denied.

IV.    Motion for Hearing

The Court held a hearing on the current matter on August 23, 2019 and October 4, 2019. Despite this, Van Dai, Praveen Sethi, and Shahnaz Sethi have each requested a hearing (Dkt. #337; Dkt. #338; Dkt. #339).  Notably, none of the movants were in attendance at either the August 23 or October 4 hearing.  The Receiver opposes the movants' request as duplicative, an inefficient

use of judicial resources, and harmful to the interests of recovering investors. The Court agrees.

Moreover, the Court has denied Van Dai, Praveen Sethi, and Shahnaz Sethi's attempts to intervene

in this action. Thus, after a careful review of the record and the arguments presented, the Court

finds that another hearing is not warranted. Van Dai, Praveen Sethi, and Shahnaz Sethi's requested

relief is accordingly denied.

      V.      Criminal Referral

Pursuant to 18 U.S.C. § 401,

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as--
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2) Misbehavior of any of its officers in their official transactions;
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Under 18 U.S.C. § 401(3), the elements of criminal contempt are: "(1) a reasonably specific order;

(2) violation of the order; and (3) the willful intent to violate the order." *United States v.*

*Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997) (citing *Cooper v. Texaco*, 961 F.2d 71, 72 n.3

(5th Cir. 1992)). "The ability to punish disobedience to judicial orders is regarded as essential to

ensuring that the Judiciary has a means to vindicate its own authority without complete dependence

on other Branches." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987).

To be sure, "[i]f a party can make himself a judge of the validity of orders which have been issued,

and by his own act of disobedience set them aside, then are the courts impotent, and what the

Constitution now fittingly calls 'the judicial power of the United States' would be a mere

mockery." *Id.* (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)); *see also*

*Michaelson v. United States ex rel. Chicago, St. P., M., & O.R. Co.*, 266 U.S. 42, 45 (1924) ("That

the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law.  It is essential to the administration of justice.").

The vesting of contempt power in the judiciary was not merely predicated upon a concern that court proceedings might be disrupted.  Rather, "it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial," which served as the underlying concern.  *Id.* at 798 (citing *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 333 (1904)).  Thus, "[t]he distinction between in-court and out-of-court contempts has been drawn not to define when a court has or has not the authority to initiate prosecution for contempt, but for the purpose of prescribing what procedures must attend the exercise of that authority."  *Id.*  Should contempt be grounded in behavior within the view of the court, "a hearing and formal presentation of evidence" may be dispensed with.  *Id.* (citing *Bloom v. Illinois*, 391 U.S. 194, 204 (1968)).  Should contempt be grounded in behavior which occurred outside the presence of the Court, however, normal adversary procedures will be required.  *Id.* at 798–99 (stating that defendants in criminal contempt proceedings "must be presumed innocent, proved guilty beyond a reasonable doubt, [] accorded the right to refuse to testify against themselves, [] advised of charges, have a reasonable opportunity to respond to them, [] permitted the assistance of counsel and the right to call witnesses, [] given a public trial before an unbiased judge, and [] be afforded a jury trial for serious contempts.") (internal citations omitted).  To comply with the required adversarial proceedings, courts have the authority to initiate a prosecution for criminal contempt.  *Id.* at 799 ("[W]hile the prosecution of in-court and out-of-court contempts must proceed in a different manner, they both proceed at the instigation of the court.").  This occurs by the district court making a criminal contempt referral to the United States Attorney's Office when the court believes that criminal contempt has occurred.  *Id.* at 801–02 ("Referral will thus enhance the prospect that

investigative activity will be conducted by trained prosecutors pursuant to Justice Department guidelines).

Here, the Court's Order Granting Joint *Ex Parte* Motion to Confirm Receivership Asset (Dkt. #293) was unequivocally clear. The Court's Order stated:

> IT IS HEREBY ORDERED AND CONFIRMED that the Receivership Estate includes Elkwood Capital, Inc. and that the Receiver's authority over the Receivership Estates applies to Elkwood Capital, Inc., its bank accounts, and any assets titled in its name or under its custody or control;
>
> IT IS FURTHER ORDERED AND CONFIRMED that the Receiver has authority to take possession of all records related to Elkwood Capital, Inc.

(Dkt. #293). Receiver's counsel, after gathering all Elkwood Capital employees and serving Sameer Sethi, explained the Court's Order to the sales staff. The Commission and the Receiver then proceeded to change the locks on the second- and sixth-floor offices. Nonetheless, Sameer Sethi, Jr. allegedly took it upon himself to directly disobey the Court's Order and attempt to abscond with evidence of his mother and father's actions. Sethi Jr. sought to accomplish his task by breaking ceiling tiles, climbing over the locked partition, and taking property—allegedly one or two computers—which the Court's Order encompassed. Sethi, Jrs. actions were in direct contravention of the Court's Order—an Order that was "reasonably specific." *Landerman*, 109 F.3d at 1068. Sethi, Jr., was aware that the Court authorized the seizure of all evidence and assets belonging to, or under the control of, Elkwood Capital to protect the Receivership Estate. Despite this knowledge, Sethi Jr. intentionally broke into a locked office and took evidence belonging to the Receivership Estate. *Id.*

As a result of Sethi Jr's. actions, the Commission and the Receiver now have potentially tampered with evidence that will require forensic examination to discover the extent to which Sethi, Jr. damaged or altered the computers. These actions directly undermined a judicially sanctioned seizure, obstructed justice, challenged the authority of the Judiciary, and must

accordingly be punished "to ensur[e] that the Judiciary has a means to vindicate its own authority." *Young*, 481 U.S. at 793. The Court hereby finds it appropriate to refer this matter to the United States Attorney's Office for the Eastern District of Texas. Sethi Jr. is accordingly on notice that the Court finds Sethi Jrs. actions, as described above, merit a charge of criminal contempt. *See* 18 U.S.C. § 401(3).

**CONCLUSION**

It is therefore **ORDERED** that Julissa Martinez' Motion to Intervene, Request for Leave to File Action Against Receiver, and Request for Preliminary Injunction for Return of Seized Property (Dkt. #296) is **GRANTED in part and DENIED in part**. Julissa Martinez' Motion to Intervene is **GRANTED**. Martinez' Request for Leave to File Action Against receiver and Request for Preliminary Injunction for Return of Seized Property, however, is **DENIED**. Additionally, the Receiver is hereby **ORDERED** to provide notice to the Court within one (1) month of the publishing of this Memorandum Opinion & Order on the status of the LegacyTexas Bank accounts.

It is further **ORDERED** that this matter is hereby referred to United States Attorney's Office for the Eastern District of Texas for a charge of criminal contempt against Sameer Sethi, Jr.

It is further **ORDERED** that Trinity Escrow, LLC's Emergency Request for Preliminary Injunction for Return of Seized Property (Dkt. #314) is **DENIED**.

It is further **ORDERED** that Kingsbridge Capital, LLC's Emergency Motion to Intervene (Dkt. #316) is **DENIED**.

It is further **ORDERED** that Kingsbridge Capital, LLC's Emergency Motion for Preliminary Injunction for Return of Possession of Seized Property (Dkt. #317) is **DENIED**.

It is further **ORDERED** that Request for Concurrent Hearing on Emergency Motions by Julissa Martinez, Trinity Escrow, LLC, and Kingsbridge Capital, LLC (Dkt. #318) is **GRANTED**.

It is further **ORDERED** that Trinity Escrow, LLC's Emergency Motion to Intervene (Dkt. #319) is **DENIED**.

It is further **ORDERED** that Emergency Pro Se Motion to Intervene per Federal Rule of Civil Procedure 24(a)(2) (Dkt. #324) is **DENIED**.

It is further **ORDERED** that Emergency Pro Se Motion to Intervene per Federal Rule of Civil Procedure 24(a)(2) (Dkt. #335) is **DENIED**.

It is further **ORDERED** that Emergency Pro Se Motion to Intervene per Federal Rule of Civil Procedure 24(a)(2) (Dkt. #336) is **DENIED**.

It is further **ORDERED** that Motion for Hearing per Federal Rule of Civil Procedure 7(b)(1) (Dkt. #337) is **DENIED**.

It is further **ORDERED** that Emergency Motion for Hearing per Federal Rule of Civil Procedure 7(b)(1) (Dkt. #338) is **DENIED**.

It is further **ORDERED** that Emergency Motion for Hearing per Federal Rule of Civil Procedure 7(b)(1) (Dkt. #339) is **DENIED**.

**SIGNED this 22nd day of January, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE